## E. I. DUPONT DE NEMOURS & COMPANY *v.* DAVIS, DIRECTOR GENERAL OF RAILROADS, AGENT.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 517.   Argued March 14, 1924.—Decided April 7, 1924.

1. In a complaint showing by apt allegation that the plaintiff sues as the Director General of Railroads continued in that office by the President under §§ 202 and 211 of the Transportation Act, a description of him " as agent ", appointed under § 206 of the act, may be rejected as surplusage.  P. 459.
2. Paragraph (3), added by the Transportation Act to § 16 of the Interstate Commerce Act and providing: "All actions at law by carriers subject to this Act for recovery of their charges . . . shall be begun within three years from the time the cause of action accrues, and not after ", does not apply to an action by the Director General of Railroads to recover demurrage charges accrued to the United States during the period of federal control of railroads.  *Id.*

287 Fed. 522, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals which reversed a judgment of the District Court sustaining a demurrer to the complaint in an action by the Director General of Railroads to recover demurrage charges.

*Mr. Clifford H. Browder* and *Mr. C. A. Cunningham,* with whom *Mr. Z. B. Harrison* was on the brief, for petitioner.

It was within the power of this Court to grant the writ of certiorari, though the judgment of the Circuit Court of Appeals did not dispose of the case, it being one where original jurisdiction was based only on diversity of citizenship. Jud. Code, §§ 128, 240; *American Constr. Co.* v. *Jacksonville, etc., Ry. Co.,* 148 U. S. 372; *Forsyth* v. *Hammond,* 166 U. S. 506; *Denver* v. *New York Trust Co.,* 229 U. S. 123; *The Three Friends,* 166 U. S. 1; *The Conqueror,* 166 U. S. 110; *Hamilton-Brown Shoe Co.* v. *Wolf Bros. & Co.,* 240 U. S. 251.

The Circuit Court of Appeals erred in determining that § 16(3) of the Commerce Act, as amended by the Transportation Act, is not applicable to suits by the Director General of Railroads for charges accruing during federal control.

It was the policy of the Congress and the President to operate federally controlled roads without the usual immunity of the sovereign from legal liability. 39 Stat. 619; President's Proclamations, December 26, 1917, and April 11, 1918; Federal Control Act, §§ 8–10; *Director General* v. *Viscose Co.,* 254 U. S. 498; *Missouri Pac. R. R. Co.* v. *Ault,* 256 U. S. 554.

Section 16(3) of the Commerce Act is retrospective. *Sohn* v. *Waterson,* 17 Wall. 596; *United States* v. *Director General,* 80 I. C. C. 143; *Phillips Co.* v. *Grand Trunk Ry. Co.,* 236 U. S. 662; *Louisville Cement Co.* v. *Interstate Commerce Comm.,* 246 U. S. 638; *Kansas City So. Ry. Co.* v. *Wolf,* 261 U. S. 133.

The Director General is bound by the limitation in § 16(3) of the act. *United States* v. *Director General,* 80 I. C. C. 143; *Davis* v. *Dupont,* 287 Fed. 522; Transportation Act, § 206; *Northern Pac. Ry. Co.* v. *North*

*Dakota,* 250 U. S. 135; *North Carolina R. R. Co.* v. *Lee,* 260 U. S. 16; *In re Tidewater Coal Exchange,* 280 Fed. 648; *In re Hibner Oil Co.,* 264 Fed. 667; *Davis* v. *Pullen,* 277 Fed. 650.

The Government stood in the shoes of the carriers during federal control and was included in the word " carriers " in § 16(3). Federal Control Act, § 10; *Missouri Pac. R. R. Co.* v. *Ault,* 256 U. S. 554.

A receiver is a carrier under the Commerce Act. *United States* v. *Ramsey,* 197 Fed. 144; *United States* v. *Nixon,* 235 U. S. 231; *Rutherford* v. *Union Pac. Ry. Co.,* 254 Fed. 880; *Evans* v. *Union Pacific Ry. Co.,* 6 I. C. C. 520.

The exclusion of the Director General from certain obligations in the Commerce Act shows that he was subjected to all other rights and duties in said act, including the restrictions in § 16(3). *Director General* v. *Viscose Co.,* 254 U. S. 498.

Section 16(3) should be construed to avoid discrimination and absurdity. *United States* v. *Southern Pac. R. R. Co.,* 230 Fed. 270.

The Transportation Act established no new limitation in Arkansas. *Cattle Raisers Assn.* v. *Chicago, etc. Ry. Co.,* 10 I. C. C. 83; *Chicago, etc. Ry. Co.* v. *Lena Lumber Co.,* 99 Ark. 105.

The decision of the Circuit Court of Appeals that Davis, Director General, in his capacity as federal agent, was the proper party plaintiff, was based on an erroneous construction of the law. Transportation Act, §§ 202, 206, 211; *Director General* v. *Struthers Furnace Co.,* 271 Fed. 792; *Phila. & Read. Ry. Co.* v. *Laurel Coal Co.,* 276 Fed. 1019; 25 R. C. L. 981, par. 229.

*Mr. George B. Pugh* and *Mr. A. A. McLaughlin,* with whom *Mr. Thos. S. Buzbee* and *Mr. H. T. Harrison* were on the brief, for respondent.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an action to recover demurrage charges accrued at Little Rock, Arkansas, during May, June and July, 1918, on certain shipments of cotton linters. The defendant, petitioner here, demurred to the complaint on the grounds: (a) That the cause of action was barred by the statute of limitations; and (b) That plaintiff was without authority to bring the action. The District Court sustained the demurrer but was reversed by the Court of Appeals. 287 Fed. 522.

There is nothing in the second point and we dispose of it at once. The contention is that the authority to maintain the action is vested in the Director General of Railroads, originally designated under the Federal Control Act and continued by the President under §§ 202 and 211 of Transportation Act, 1920, c. 91, 41 Stat. 459, 469; and not in Davis, as Agent, appointed under § 206 of the latter act. Apt allegations, however, are found in the body of the complaint to bring the plaintiff, Davis, within the provisions of §§ 202 and 211. At most the words " as agent " are surplusage; and it is impossible that defendant could have been prejudiced by their use. Act of February 26, 1919, c. 48, 40 Stat. 1181.

The action was brought more than three years after the cause of action accrued. The statute relied upon as a bar is § 424, Transportation Act, 1920, 41 Stat. 491–492, being a new paragraph added to § 16 of the Interstate Commerce Act by way of amendment. The pertinent words are: "(3) All actions at law by carriers subject to this Act for recovery of their charges, or any part thereof, shall be begun within three years from the time the cause of action accrues, and not after." It is insisted that the United States—or the Director General, representing the United States—is included in the provision as a carrier

subject to the act. Our opinion is otherwise. The act consists of five titles. Title II is devoted exclusively to the subject of the termination of federal control, which it is declared shall take place at 12.01 a. m., March 1, 1920,—the act becoming effective February 28, 1920. Title III deals only with the subject of disputes between carriers and their employees and subordinate officials, creates Railroad Boards of Labor Adjustment and a Railroad Labor Board, and vests them with appropriate powers. Title IV consists entirely of amendments to the Interstate Commerce Act and includes § 424, here relied upon. While these three titles are concerned with related subjects, they are entirely distinct one from another. Title II, which is complete in itself, among other things, provides, § 200, that after the termination of federal control, the President shall have no power to use or operate the railroads or systems of transportation, or to control or supervise the carriers or their business affairs; and directs him, § 202, to adjust, settle, liquidate and wind up all matters and all questions and disputes, of whatsoever nature, arising out of or incident to federal control *as soon as practicable* after the termination thereof. The only provision prescribing a period of limitation definitely in respect of such matters, is found in § 206 (a); and it relates only to actions, suits and proceedings brought *against* an agent to be designated by the President for that purpose, and fixes as the period of limitation that now prescribed by state or federal statutes, but not later than two years from the passage of the act. In this Title, thus specifically devoted to the subject of winding up matters arising out of federal control, nothing is to be found which suggests any limitation of time within which actions, suits or proceedings shall be brought to enforce liabilities arising out of federal control, in favor of the United States.

Turning now to Title IV, amending the Interstate Commerce Act, the declaration at the beginning is that its

provisions " shall apply to common carriers " engaged in various enumerated kinds of transportation. § 400, p. 474. There is to be found in this Title no provision specifically relating to the period of federal control or dealing with the question of liability to or of the Government in respect of any matter arising during such control. If Congress had intended to fix a period of limitation applicable to actions, suits or proceedings brought in behalf of the United States in respect of liabilities arising out of federal control, we should naturally expect to find it in Title II, where such matters are exclusively dealt with; and not in Title IV, which deals with common carriers entirely apart from such control. It may not have been unusual in common speech, to describe the Director General as a carrier while he was operating the railroads; but it is clear that he was not intended to be included by that term as it is generally employed in acts of Congress. The Federal Control Act, c. 25, 40 Stat. 451, repeatedly recognizes a distinction between the President—including, of course, the Director General—and the carriers. The first section itself limits the meaning of the word " carriers " to railroads and systems of transportation, which as carriers had been taken over by the President. Accurately speaking, the Director General was not a carrier, but an operator of carriers. The distinction to which we have referred, constantly appears in the provisions of the act, as, for example: " The President may nevertheless pay to any carrier while under Federal control an annual amount," etc. § 2; " On the application of the President or of any carrier," etc., § 3; " Carriers while under Federal control shall be subject to all laws and liabilities as common carriers," etc., § 10; " actions at law or suits in equity may be brought by and against such carriers," etc., § 10; " moneys and other property derived from the operation of the carriers during Federal control are hereby declared to be the property of the United States," § 12.

In taking over and operating the railroad systems of the country the United States did so in its sovereign capacity, as a war measure, " under a right in the nature of eminent domain," *North Carolina R. R. Co.* v. *Lee,* 260 U. S. 16; *Missouri Pacific R. R. Co.* v. *Ault,* 256 U. S. 554; *Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135; *In re Tidewater Coal Exchange,* 280 Fed. 648, 649; and it may not be held to have waived any sovereign right or privilege unless plainly so provided. Moneys and other property derived from the operation of the carriers during federal control, as we have seen, are the property of the United States. § 12, 40 Stat. 457. An action by the Director General to recover upon a liability arising out of such control is an action on behalf of the United States in its governmental capacity, (*Chesapeake & Delaware Canal Co.* v. *United States,* 250 U. S. 123, 126; *In re Tidewater Coal Exchange, supra*) and, therefore, is subject to no time limitation, in the absence of congressional enactment clearly imposing it. *United States* v. *Nashville, C. & St. L. Ry. Co.,* 118 U. S. 120, 125; *United States* v. *Whited & Wheless, Ltd.,* 246 U. S. 552, 561. Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government. *United States* v. *Whited & Wheless, Ltd., supra.*

The foregoing analysis of the acts of Congress viewed in the light of the principles just stated, demonstrates that § 424 has no application to an action of the kind here involved; but applies to common carriers apart from their operation under federal control, and we so hold.

*Affirmed.*