## Florida East Coast Growers Association *v.* Davis, Appellant.

*Railroads—Initial carriers—Director general—Operations by— Suit against.*

In an action of assumpsit against the director general on breach of contract, pursuant to a bill of lading, there can be no recovery where the alleged breach occurred on the lines of a common carrier after the expiration of federal control.

When the director general was not operating the particular railroad system on which the alleged negligent operations occurred he was not liable therefor.

By the legislation taking federal control of railroads Congress limited the liability of the director general to what he did or omitted as director of any particular system.

The director general was not a carrier, but rather an operator of carriers.

Argued April 29, 1924. Appeal, No. 116, April T., 1924, by defendant, from judgment of C. P. Allegheny Co., April T., 1922, No. 1550, on verdict for plaintiff in the case of Florida East Coast Growers Association, Inc., a corporation, v. James C. Davis, Director General of Railroads, Agent, operating Inter Alia the Pennsyl-

vania Railroad. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit on breach of contract of transportation. Before REID, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $2,103.77 and judgment thereon. Defendant appealed.

*Error assigned* was, among others, refusal of defendant's motion for judgment non obstante veredicto.

*William B. McFall, Jr.,* and with him *Dalzell, Fisher & Dalzell,* for appellant.—Railroad systems under federal control retained their identity so that actions at law must be brought against the agent operating each carrier separately: Wray, Moore & Co. v. American Railway Express Co., 75 Pa. Superior Ct. 425; Missouri Pacific Railroad Co. v. Ault, 256 U. S. 554; Northern Pacific Railroad Co. v. North Dakota, 250 U. S. 135; Granquist v. Duluth, Missabe & Northern Railway Co. et al., 193 Northwestern Reporter 126; Farr v. St Louis Southwestern Railroad Co. et al., 243 Southwestern Reporter 800.

*Guy B. Hoge,* for appellee.—The suit was properly brought against the director general, who contracted to carry the shipment in question and who is recognized as one corporate entity: Globe & Rutgers Fire Insurance Co. v. Hines, Agent, 273 Fed. 774; St. Louis, B. & N. Ry. Co. v. McLean, 241 S. W. 1072; Donovan v. Director General of Railroads, 294 Fed. 525; David, Agent, U. S. R. R. Admrn. v. Alexander et al., 220 Pacific Rep. 358; Gulf, Colo. & S. Fe Ry. Co. & Payne v. Bostwick, 233 S. W. 112; Mardis v. Hines, Director General of Railroads, 267 Fed. 171, 172; Haubert v. B. & O. R. Co., 259 Fed.

361; Hines, Director General of Railroads, v. Dahn, 267
Fed. 105; Erie R. R. Co. v. Caldwell, 264 Fed. 947, 948.

OPINION BY LINN, J., July 2, 1924:

After federal control of the railroads terminated,
"James C. Davis, Director General of Railroads, Agent,
operating, inter alia, the Pennsylvania Railroad," was
summoned as defendant in assumpsit.   Plaintiff de-
clared for breach of contract to transport a car of to-
matoes, pursuant to a bill of lading issued on February
24, 1920, at Homestead, Florida, by the Director General
of Railroads operating the Florida East Coast Railway,
for transportation to South Jacksonville, Florida,
whence the shipment was diverted to Pittsburgh, Penn-
sylvania, where it was tendered in bad order, as is al-
leged, the result of negligent transportation.   Defendant
denied liability.   There was a verdict for plaintiff, fol-
lowed by a motion under the Act of 1905 for judgment
for defendant n. o. v.; it was refused and is here for re-
view.

The following quotation from the opinion of the court
below sufficiently states the facts: "The car was en
route through Florida on February 26th and 27th......
Under the Act of Congress, federal control ceased March
1st, at 12:01 A. M.   The car was transferred to the lines
of the Pennsylvania Railroad at 12 o'clock noon, March
3d,......There was convincing evidence as to the low
temperature in and about Pittsburgh on the night of
March 5th and the morning of March 6th, and of the
fact that the ventilators were partially open when the car
was inspected by consignee on the morning of the lat-
ter date, and, consequently, it is clear that the freez-
ing occurred on the line of the Pennsylvania Railroad
before consignee was informed of the car's arrival."

The agent defended on the ground that, as operating
the Pennsylvania railroad system, the director general
had had nothing to do with the shipment, as it had
reached that line after federal control ceased.   On the

other hand, plaintiff contended, and the court below agreed, that as the contract was made by a director general of railroads who was "one corporate entity," the defendant though summoned as operating the Pennsylvania railroad system, was responsible, it being immaterial that the contract was made by the director general of railroads operating a Florida railroad.

Two points are clear. First, as the director general of railroads was not operating the Pennsylvania system during the time the car moved over its lines, federal control having ceased before, recovery cannot be had against defendant, for anything occurring while he was not so operating: Sec. 200 Trans. Act, 1920, c. 91, 41 Stat. 459; DuPont de Nemours & Co. v. Davis, 264 U. S. 456. Second, it is now settled that by the legislation taking federal control of the principal railroad systems, Congress limited the liability of the director general (and his successor, the agent) to what he did, or omitted, as director of any particular railroad system. "Accurately speaking, the director general was not a carrier, but an operator of carriers": DuPont de Nemours v. Davis, (supra). Whatever doubt may have been left on this subject by the decision in Missouri Pacific Ry. Co. v. Ault, 256 U. S. 554, was removed in Davis, Director General &c., v. Donovan, 265 U. S. 257; it arose on a libel in admiralty against the director general operating the New Haven Railroad system for a tort in New York harbor; the evidence showed that the wrong was done by the New York Central Railway system and not by the New Haven; as the court below said "inasmuch as he is the same entity that is operating the New York Central," a decree was nevertheless made against the director general. The Supreme Court reversed, saying: "Here the director general came into court to defend only against a liability asserted because of the negligence of agents operating the New York, New Haven and Hartford system, and not because of anything which might have been done or omitted by those of

another system. In such circumstances, under the statute and orders, we think the court could adjudge no liability against him except such as might have been enforced against the New York, New Haven and Hartford Railroad Company before federal control. Under those conditions the United States consented to be proceeded against. One reason therefor, if any is necessary, seems plain enough. Every system was operated as an entity, its agents and employees knew and carried on its ordinary affairs, but not those of other carriers. The director general necessarily relied upon the organization of each system, and could demand notice sufficient to set the proper one in motion; otherwise proper defenses might not be presented."

As the director general operating the Pennsylvania Railroad for whose acts the defendant was summoned, had nothing to do with the operation of the Pennsylvania Railroad system after the termination of federal control (when the alleged damage occurred), and as, in his capacity as the operator of the Pennsylvania system at the date of the bill of lading, he could not be held for the director general's alleged breach of contract as the operator of the Florida East Coast Railway, the motion for judgment should have been granted.

The judgment is reversed and here entered for defendant.