MICHAEL J. HOUSTON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Houston v. Commissioner
Docket Nos. 9552-92, 9553-92, 9554-92, 9559-92
United States Tax Court
T.C. Memo 1995-159; 1995 Tax Ct. Memo LEXIS 158; 69 T.C.M. (CCH) 2360; April 10, 1995, Filed *158 Appropriate orders granting respondent's Motion for Summary Judgment in part will be made, and decisions will be entered for respondent except with respect to the conceded additions to tax under section 6651 for 1987. Michael J. and Sharon D. Houston, pro se. For respondent: Timothy A. Lohrstorfer and Jordan S. Musen. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Docket
Sec.
Sec.
Number
Petitioners Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
9559-92
Michael J.
1986
$ 2,973
--  $ 148.65
and Sharon D.
Houston
9552-92
Michael J.
1987
2,765
$ 691.25
560.05
Houston
9553-92
Michael J.
1988
854
51.96
--  Houston
9554-92
Michael J.
1989
1,708
--  --  Houston
Additions to Tax
Sec.
Sec.
Sec.
Year
6653(a)(1)(B)
6653(a)(1)
6662(a)
1986
50 percent of
--  --  interest due
on $ 2,973
1987
50 percent of
--  --  interest due
on $ 2,765
1988
--
$ 304.75
--  1989
--
--  $ 341.60
Respondent has conceded the section 6651 additions to tax for late *159 filing for 1987. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issues for decision are whether the statute of limitations bars assessment for 1986, whether the gun sales activity of Michael J. Houston (petitioner) constituted a trade or business during the years in issue, and whether petitioners are liable for the additions to tax for negligence. Issues relating to the gun sales activity, along with other determinations of respondent, were submitted on respondent's Motion for Summary Judgment, which was based on matters deemed admitted by reason of petitioner's failure to respond to requests for admissions served by respondent under Rule 90. FINDINGS OF FACT At all material times, petitioners were married to each other. They were residents of Indiana at the time they filed their petitions. Petitioner has been employed full time by Consolidated Rail Corporation (Conrail) since January 21, 1976. During 1984, 1985, and part of 1986, petitioner worked the evening and night shifts. As a night-shift employee, he was also required *160 to work weekends. During 1986, petitioner accepted a daytime position with Conrail that required him to average 10 hours per day, 6 days a week. In 1987, he began working as an electronics specialist for Conrail. In 1983, petitioner commenced a gun shop activity. The gun shop activity was located in petitioners' residence on Six Points Road in Indianapolis, Indiana, from 1983 until April 1, 1986. During 1983 through 1986, petitioner did not have a business telephone listing or engage in Yellow Pages advertising for his gun shop activity. On September 27, 1985, petitioner incorporated Mike's Guns, Inc. (the corporation). Petitioner was the sole shareholder of the corporation. During the years in issue, the corporation was an "S" corporation for Federal tax purposes. Petitioner loaned $ 3,000 to the corporation. His tax basis in the corporation was $ 3,000 for 1986, 1987, and 1988 and was $ 3,500 for 1989. Beginning in 1986, petitioner operated his gun shop activity in a barn-type building that he had constructed on property in Greencastle, Indiana, that he had purchased in 1981. The property was located in the country, off a gravel road, and was heavily wooded. During *161 the years in issue, he had no advertising sign or signs for the gun shop on the road leading to the gun shop or in Greencastle. He did not have a telephone listing in the local Yellow Pages and did not advertise his gun shop in the newspaper, on the radio, or on television. His advertising expense for the years in issue consisted solely of purchasing and distributing pens, mechanical pencils, calendars, and business cards. During the years in issue, petitioner relied primarily on word of mouth for his advertising for the gun shop activity. During the years in issue, the gun shop had no display counters. Petitioner had no employees to assist him in operating the gun shop. He used a 10-percent markup on guns sold by him. He filed annual reports with the Secretary of State of Indiana and maintained a Dealers' Firearms Record Book. He did not maintain a mileage log or calendar documenting use of his vehicle in the gun shop activity. He maintained only sporadic documentation for expenses incurred in relation to the gun shop activity, and he did not keep records or maintain bank accounts separating his gun shop activity expenses from personal and family expenses. From May 1986 *162 to November 1987, petitioner and his family resided in the building where the gun shop was located. Petitioner did not maintain a separate business telephone line or record business use of his telephone as distinct from personal use. The gun shop was moved to Indianapolis after the summer of 1992. When he began business in 1983, petitioner employed a tax preparer to advise him and prepare his tax returns for 1983, 1984, and 1985. The preparer was subsequently investigated for and convicted of Federal tax offenses. After petitioner's returns for those years were audited, he conceded that he had not kept adequate records for 1983 or 1984. He challenged the determination for 1985 in a small tax case conducted in this Court under section 7463. After trial in October 1990, the case was decided against petitioner in a Summary Opinion filed July 11, 1991. In that opinion, the Court found, based on the evidence presented at trial, that the gun shop sold 38 guns in 4-1/2 years between 1984 and 1989. Petitioners' personal income tax return for 1986 was filed August 21, 1987. On Schedule E of that return, petitioners claimed a net loss from Mike's Guns, Inc., in the amount of $ 13,145.54. *163 In June 1990, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1986. On the amended return, petitioners reported additional tax owed in the amount of $ 2,682. The explanation of changes stated the following: Line 1 - The taxpayers are involved with 2 S corporations. These returns were amended (see copies attached). - Taxpayer had a commodities loss of $ 2,034. This loss was not reported on the originally filed returns. - Taxpayer & spouse both owned rental properties. These properties were not reported correctly when return was originally filed. Line 4 - Schedule A deductions reduced by unsubstantiated expenses.
The loss claimed with respect to Mike's Guns, Inc., on the amended return was $ 8,763. The amended return reported $ 2,221 interest and $ 3,000 rent from Mike's Guns, Inc., and deducted $ 1,730 depreciation in relation to the gun shop. The amended return for 1986 was prepared by John W. Weingardt (Weingardt), certified public accountant (C.P.A.). Petitioner had employed Weingardt, who was then associated with the C.P.A. firm of Leventhal & Horwath, after the problems with his prior tax return preparer arose. Weingardt *164 had been a C.P.A. since 1988, had spent 3-1/2 years with Ernst & Young, and later became a partner of a smaller firm. His practice predominately involved small closely held business interests. Weingardt first became involved with petitioner in April 1989, when he was referred to Leventhal & Horwath by his then attorney. Weingardt was first engaged to prepare amended returns for 1983 through 1985. When Weingardt left Leventhal & Horwath to start his own practice, petitioner continued to work with him. At the time that petitioner met Weingardt, he had not filed a return for 1987 or 1988. Petitioners' 1987 return was filed on May 10, 1990. That return reported only wages and salary. On July 13, 1990, an amended return for 1987 was filed. On that return, petitioners claimed subchapter S losses of $ 10,182 from Mike's Guns, Inc. The amended return for 1987 reported $ 3,342 interest and $ 3,000 rent from Mike's Guns, Inc., and deducted $ 1,678 depreciation in relation to the gun shop. Petitioner filed a 1988 return in October 1989. That return reported his wages and some interest income. Neither income nor loss was claimed with respect to Mike's Guns, Inc. In February 1992, *165 an amended return for 1988, prepared by Weingardt, was filed. On that return, $ 11,109 was claimed as the loss from Mike's Guns, Inc. The amended return also reported interest of $ 4,020 and rent of $ 3,000 received from Mike's Guns, Inc., and deducted depreciation of $ 1,553 in relation to the gun shop. Petitioners' return for 1989 was filed in October 1990. On that return, $ 12,329 was deducted as a loss from Mike's Guns, Inc. The amount of $ 4,821 was reported as interest income, and $ 3,500 was reported as rental income from the gun shop. The amount of $ 1,416 was deducted as depreciation in relation to the gun shop. Forms 1120S, U.S. Income Tax Returns for an S Corporation, filed for Mike's Guns, Inc., reported gross receipts, gross income, and expenses as follows: Gross Gross
Year
Receipts
Income Expenses 1985
$ 3,825.77
$    42.48 $ 10,232.94
1986
2,573.16
(888.56)
12,256.98
1986
(Amended)
1,847.00
168.00 8,931.00
1987
2,298.00
230.00 10,412.00
1988
3,350.00
305.00 11,414.00
1989
2,938.00
294.00 12,624.00
1990
3,610.00
1,652.00 4,269.00
The corporate returns for the years in issue deducted rent *166 and interest in the amounts reported by petitioner on his individual returns. After the 1986 amended return and the 1987 and 1988 returns were filed, they were selected by the Internal Revenue Service (IRS) for examination. The examining agent was Donna Paradis (Paradis). On May 1, 1990, petitioners executed Form 2848, Power of Attorney and Declaration of Representative, to Weingardt and to an attorney, with respect to their individual income tax liabilities for 1983 through 1989. That form stated: The attorney(s)-in-fact (or either of them) are authorized, subject to revocation, to receive confidential information and to perform any and all acts that the principal(s) can perform with respect to the above specified tax matters (excluding the power to receive refund checks and the power to sign the return, unless specifically granted below). See Regulations section 1.6012-1(a)(5) for information on returns made by agents. (List excludable powers below. Indicate if you are granting the power to sign the return.)
No exclusions were listed, and the power of attorney was not revoked at any material time. Also in May 1990, petitioners executed a Form 872, Consent to Extend *167 the Time to Assess Tax, by which the date for assessment with respect to the return for 1986 was extended to December 31, 1990. In September 1990, petitioners executed a Form 872, extending the date for assessments with respect to 1986 to May 31, 1991. On April 26, 1991, Paradis closed her examination of petitioner's return for 1986. She forwarded the file to the Quality Assurance Staff of respondent's Indianapolis Examination Division. The file was received by Martha Metz (Metz) of the Quality Assurance Staff on April 29, 1991. Metz placed a telephone call and left a message for Weingardt concerning further extension of the statute of limitations. On April 30, 1991, Metz directed the preparation of a Form 872 for 1986. On or about May 8, 1991, petitioner sent a letter to the Quality Assurance Staff, reciting his dissatisfaction with the prior history of the audit. In that letter, he stated: I have been informed that Appeals will not take a case unless there are seven months left on the statute or an extension. I am not inclined to grant another full year extension on the statutes but in an effort to allow appeals time to look at the case I would be willing to grant *168 an extension for eight months. This would give them an extra month over the seven which they require. In light of my two previous statute extensions I feel this is more than reasonable. If this is not acceptable to the service please notify me via certified mail with a 90 day letter and I will write the Tax Court requesting a petition. Please respond to this correspondence within 10 days.
Petitioner's letter was received by the IRS on May 9, 1991. On May 10, 1991, Weingardt executed a Form 872, extending the period of limitations for issuance of a notice of deficiency for 1986 to February 29, 1992. The Form 872 was duly executed by a group manager for respondent on May 10, 1991. After Weingardt signed the Form 872 extending the period of limitations to February 29, 1992, he discussed the matter with petitioner and perceived a problem. Weingardt did not, however, seek to retrieve the Form 872 or otherwise communicate to respondent any problem with the extension. In July 1991, petitioner wrote to the IRS, asserting that the period of limitations on assessments for 1986 had expired. The statutory notice for 1986 was sent to petitioners on February 5, 1992. A separate *169 statutory notice was sent to petitioner for 1987 through 1989, also on February 5, 1992. OPINION Procedural Matters
The record in this case is voluminous and disproportionate in size to the dollar amounts involved. Although the problems are primarily attributable to petitioner, respondent has filed unnecessary motions and has attempted to secure summary adjudication by reason of petitioner's defaults. As a result, the Court has been forced to ascertain the facts without reasonable assistance from the parties, in order to determine the merits and to resolve the dispute fairly. As appears below, the procedural facts are important to this process. Our efforts have been undertaken despite petitioner's disobedience of Court orders and his scurrilous statements to and about the Court, such as his unfounded charges of bias and prejudice asserted during the time that four different judicial officers have been involved in these proceedings (in addition to the special trial judge who heard and decided the prior case). We must decide these cases using our best judgment and without regard to our dissatisfaction with the way they have been conducted. No party here is entitled to *170 disposition on the basis of sanctions against another party. Although two notices of deficiency were sent to petitioner, one jointly to petitioners for 1986 and one to petitioner for 1987, 1988, and 1989, petitioner filed four separate petitions. Petitioner requested separate trial dates and, as his reasons, stated: a. Each tax year is separate with items unique to each year and which when collectively lumped together deny the Petitioner due process and make for an overly complicated and extended petition. b. Petitioner wishes to pay the deficiency for tax year 1988 and then sue the Commissioner for a refund. By integrating the tax years into one Notice of Deficiency the Petitioner is denied this right.
Petitioner did not elect the simplified procedures applicable to small tax cases. He requested trial in Indianapolis, Indiana, a city where regular trial sessions are held approximately once a year. Shortly after filing the answer, respondent moved for consolidation of the four cases. Petitioner objected on grounds including that the notice of deficiency for 1986 was untimely, that petitioner Sharon D. Houston should not be involved in the cases for the years during *171 which he filed a separate return, that he desired to pay the additional tax for 1988 and sue for a refund "thereby bringing this case before a jury of his peers". He also made various complaints about respondent's procedures. Respondent filed a point-by-point reply to petitioner's objection, but ultimately withdrew the motion to consolidate without prejudice to renewal at a later time. Thereafter, one of the docketed cases was scheduled for trial in Indianapolis. Respondent moved to calendar and consolidate the other three cases, or, in the alternative, to continue the case that had been set for trial. Petitioner again objected. The case that was set for trial was continued, and all four cases were consolidated. On January 31, 1994, respondent filed a Motion to Compel Production of Documents. Petitioner objected to the motion, disputing respondent's assertions that he failed to cooperate and representing that he had produced all of the documents that he possessed. Petitioner also requested a continuance of the hearing. The Court directed respondent to draw up a list of the documents that had been provided and continued the hearing to a later date. During the first hearing, *172 the Court noted its reservations about how respondent was proceeding in cases involving basic section 183 issues and not very large deficiencies, suggesting that respondent was creating more work than simply trying the cases. At the continued hearing, however, after respondent provided an index of the documents previously provided by petitioners, the motion to compel was granted. Petitioners were advised that failure to comply with the Court's order may result in the imposition of sanctions. By notice served April 29, 1994, all four cases were set for trial in Indianapolis on October 3, 1994. Attached to the notice of trial was the Court's Standing Pre-Trial Order that required, among other things, pre-trial exchange of documents to be used at trial, a stipulation in accordance with Rule 91(b), submission of a trial memorandum to the Court, and that the parties be prepared for trial at any time during the trial session unless a specific date had previously been set. On July 19, 1994, respondent served requests for admissions under Rule 90 on petitioner, attaching documents relating to these cases, setting out the amounts of expenses that had been substantiated by petitioners *173 and those that had not been substantiated, and setting out other facts set forth in our above findings. Respondent's requests for admissions also included statements that petitioner was negligent in the preparation of his tax returns for the years in issue, that the notices of deficiency were timely mailed to petitioner, and that petitioner did not operate the gun shop with a profit objective during the years in issue. In view of the history of these cases, the requests for admissions relating to documents, specific facts, and the authenticity of certain documents were a reasonable attempt to narrow the issues and place facts before the Court. The requests for admissions of the legal effect of the facts, contrary to petitioner's long-maintained and well-known contentions in these cases, were apparently intended to set up a technical default by petitioner. Petitioner accommodated respondent's strategy by ignoring the requests for admissions and repudiating his obligation to respond to them. Instead, petitioner filed a "Motion to Withdraw", alleging: Whereas the Petitioner Michael J. Houston is a Sovereign Citizen of the State of Indiana, one of several States making up the United *174 States of America, and; Whereas as a Sovereign citizen, the petitioner has brought matters before the Tax Court of the United States of America and; Whereas the Tax Court has no jurisdiction over Sovereign Citizens and the petitioner does not recognize or concede to the rules and/or procedures of the Federal land mass known as the District of Columbia and; Whereas the Tax Court in all instances associated with this petitioner has shown a complete disregard for the Constitutional Rights and well being of the petitioner and has shown overwhelming favoritism and partiality to the respondent therefore; * * * Along with this Motion to withdraw petitioner Michael J. Houston hereby repudiates and rescinds any and all signatures on any documents that would seek to impose any form of contract on the petitioner without his full knowledge or any such document which would restrict or infringe upon his Constitutional rights as a Sovereign citizen of the State of Indiana, one of the several States making up the United States of America.
Petitioner's motion was denied. On September 8, 1994, respondent filed a Motion for Summary Judgment, relying on the deemed admissions resulting from *175 petitioners' failure to respond. Respondent also filed a Motion to Impose Sanctions by reason of petitioners' failure to comply with prior Court orders to produce documents. In response, petitioner complained of respondent's procedures, asserted that he did not have to produce corporate records, and admitted that he ignored respondent's "stipulations" (referring to the requests for admissions). He claimed that he "withdrew the cases from the jurisdiction of the Court" and complained about alleged bias of the Court. Petitioner also moved for a continuance, reciting in part: these proceedings will, if allowed to continue in the direction they are heading, result in violent confrontation when overzealous Agents of the government acting under "colour" of Law will assuredly attempt to deprive the petitioners of life, liberty, or property without due recognition of Petitioners' Constitutional rights therefore;
Respondent's Motion for Summary Judgment and Motion to Impose Sanctions were set for hearing at the time the cases had been set for trial. When the cases were called for trial and for hearing on respondent's motions, petitioner claimed that he did not understand the *176 proceedings and moved again for a continuance. His motion was denied. Respondent's Motion for Sanctions was denied, because petitioner represented that he had produced all of the documents that he possessed, and respondent had expressly disavowed any need for documents other than those previously produced. Petitioner was not prepared for trial, but the Court received testimony from petitioner and from respondent's agent concerning execution of the consent to extend the period of limitations for 1986. The Court recessed the trial to allow petitioner to produce Weingardt as a witness. Weingardt's testimony given later the same week raised a bona fide issue as to negligence, as well as to the statute of limitations for 1986. The Court therefore gave additional time for the parties to stipulate to documents that petitioners wished to present, for petitioners to make an offer of proof in a form specified in the Court's order, for respondent to set forth how, if at all, respondent would be prejudiced if the Court set aside the deemed admissions, and for the parties to brief the statute of limitations and negligence issues. Thereafter, the parties filed a stipulation of documents *177 and briefs, and respondent filed a memorandum concerning the prejudice to respondent if the admissions should be withdrawn or modified pursuant to Rule 90(f). Petitioners have never sought to have the admissions withdrawn or modified. Petitioner filed a frivolous motion for discovery 3 months after the trial date. Petitioner was repeatedly advised by respondent and by the Court that he could not withdraw his petition and secure a jury trial. Sec. 6512(a); Estate of Ming v. Commissioner, 62 T.C. 519, 521 (1974); Dorl v. Commissioner, 57 T.C. 720, 721-722 (1972), affd. 507 F.2d 406 (2d Cir. 1974). Consolidation of these cases was logical and appropriate in view of the common issues. See Rule 141(a). Consideration of the history of losses claimed by petitioner over all of the years in which his gun shop operated is particularly required in relation to the primary issue in each of the cases, to wit, whether petitioner's gun shop activity was engaged in for profit within the meaning of section 183. Sec. 1.183-2(b), Income Tax Regs. Petitioner's reasons for seeking separate trials, on the other *178 hand, have no merit. Petitioner has been given several opportunities to address the merits of the cases and to present evidence in support of the issues, as to which he has the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). The Court, sua sponte, considered the applicability of Rule 90(f), which provides in part: Subject to any other orders made in the case by the Court, withdrawal or modification may be permitted when the presentation of the merits of the case will be subserved thereby, and the party who obtained the admission fails to satisfy the Court that the withdrawal or modification will prejudice such party in prosecuting such party's case or defense on the merits. * * *
See Dahlstrom v. Commissioner, 85 T.C. 812, 815 (1985); Morrison v. Commissioner, 81 T.C. 644, 648 (1983). Petitioner has shown no bona fide dispute as to the specific factual statements contained in the requests for admissions or concerning the documents attached to them. As to the amount of the deficiencies, he has shown no genuine issue as to any material fact. Rule 121(b). *179 The prejudice to respondent if the admissions of specific facts were vacated has been shown. That prejudice includes the necessity of producing witnesses and expending trial time to establish facts that should not be disputed. See Morrison v. Commissioner, supra at 649. Nonetheless, as to the conclusory allegations concerning negligence and timeliness of the 1986 statutory notice, the Court has considered those issues on the merits. Although respondent is entitled to rely on the Court's Rules and on facts established in accordance with those Rules in order efficiently and fairly to present a case to the Court, use of proceedings in these cases to induce default by petitioners has merely multiplied the proceedings. A trial with the burden of proof on petitioners would have been less burdensome and more likely to achieve the same result at less expense. Motion for Summary Judgment
Even considering the posttrial stipulation and petitioner's generalized assertions that he was in a trade or business, the objective facts deemed admitted lead to the conclusion that respondent's Motion for Summary Judgment should be granted in part. See Rule *180 121(c). Petitioner's history of losses and his manner of doing business during the years in issue are major factors in our decision. We give little weight to petitioner's failure to adopt a formal "business plan", in view of the simple activity in question. The objective facts, however, overcome petitioner's statements of subjective intent. Sec. 1.183-2(a), Income Tax Regs. Some of the expenses giving rise to the losses claimed seem exorbitant and inexplicable, such as the rent and interest allegedly paid to petitioners by the S corporation. The evidence indicates that petitioners loaned only $ 3,000 to the corporation, but the interest claimed each year exceeded that amount. The expenses were grossly disproportionate to the receipts. The expenses are not deductible under section 183(a); therefore, item-by-item discussion of them is not necessary. In the statutory notice, respondent adjusted petitioner's taxable income to eliminate the reported interest and rent, and none of the stipulated records or evidence show or even suggest that the other items redetermined in the statutory notice are incorrect. So far as we can determine from the record, respondent has allowed or *181 accounted for deductions to the extent that they have ever been substantiated. Petitioners' admissions with respect to these items will, therefore, be conclusive. Summary judgment is appropriate as to the deficiencies for each year in issue. Negligence
Section 6653(a)(1) for 1986 and 1987 provides as follows: (a) Negligence. -- (1) In general. -- If any part of any underpayment (as defined in subsection (c)) is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to the sum of -- (A) 5 percent of the underpayment, and (B) an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).
For 1988, section 6653(a)(1) provides: (a) Negligence. -- (1) In general. -- If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to *182 negligence (or disregard of rules or regulations), there shall be added to the tax an amount equal to 5 percent of the underpayment.
For 1989, section 6662(a) and (b) provides: (a) Imposition of Penalty. -- If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies. (b) Portion of Underpayment to Which Section Applies. -- This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following: (1) Negligence or disregard of rules or regulations. Negligence, within the meaning of section 6653(a), has been defined as the failure to do what a reasonable and ordinarily prudent person would due under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Section 6662(c) for 1989 provides: (c) Negligence. -- For purposes of this section, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional *183 disregard.
Respondent argues that petitioners' admissions in the amended returns for 1986 and 1987, in which they concede that certain expenses could not be substantiated, establish negligence. Late filing of tax returns is prima facie evidence of negligence. Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). Although the stipulated documents that were produced by petitioner after trial reflected numerous subscriptions for various tax services, there is no showing that petitioner relied on any of them. He did not employ Weingardt until 1990. Although his recordkeeping may have improved after Weingardt became involved, and the gun shop activity may have become profitable at some point, the evidence for the years in issue supports respondent's determinations. Weingardt indicated, during his testimony, that petitioner "has not really wanted to bend on whether or not he is a trade or business". In view of petitioner's stance throughout these cases and his repudiation of the Court's orders and rulings, we conclude that he simply does not comply with a legal requirement when he does not *184 agree with it. Thus, we are not persuaded that he relied on Weingardt's advice. Upon due consideration of the entire record, the additions to tax for negligence are sustained. Statute of Limitations
With respect to the statute of limitations issues for 1986, petitioner argues that respondent deliberately circumvented his refusal to extend further the period of limitations by hand delivering to Weingardt a Form 872 the day after receiving petitioner's letter in which he agreed to extend the period only 8 months. The Form 872 executed by Weingardt provided for a 9-month extension. Petitioner's version of what occurred is not supported by the evidence. Although both Weingardt and Metz each had some notes concerning execution of the Form 872, neither could recall details of the manner in which the form was delivered or received. After he signed the form and learned from petitioner that there was "a problem", Weingardt did not attempt to repudiate the form. Weingardt's authority to execute such forms was not withdrawn. In deciding this issue, we note the Supreme Court's admonishment that "Statutes of limitation sought to be applied to bar rights of the Government must receive *185 a strict construction in favor of the Government." Badaracco v. Commissioner, 464 U.S. 386, 391 (1984) (quoting E.I. Dupont de Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924)); see also Bufferd v. Commissioner, 506 U.S.    , 113 S. Ct. 927, 930 n.6 (1993). The burden of proof in establishing that the period of limitation has expired rests with petitioners. As we said in Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 240-241 (1990): The expiration of the period of limitation on assessment is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proving its applicability. Rules 39, 142(a). To establish this defense, the taxpayer must make a prima facie case establishing the filing of the * * * return, the expiration of the statutory period, and receipt or mailing of the notice after the running of the period. Miami Purchasing Service Corp. v. Commissioner, 76 T.C. 818, 823 (1981); Robinson v. Commissioner, 57 T.C. 735, 737 (1972). Where *186 the party pleading the defense makes such a showing, the burden of going forward with the evidence shifts to respondent who must then introduce evidence to show that the bar of the statute is not applicable. Adler v. Commissioner, 85 T.C. 535, 540 (1985). Where respondent makes such a showing, the burden of going forward then shifts back to the party pleading the affirmative defense to show that the alleged exception to the expiration of the period is invalid or otherwise inapplicable. Adler v. Commissioner, supra at 540. The burden of proof, i.e., the burden of ultimate persuasion, however, never shifts from the party who pleads the bar of the statute of limitations. Adler v. Commissioner, supra at 540.
The Form 872 executed by Weingardt was valid on its face, and petitioner has not proven any grounds for disregarding it. The statutory notice of deficiency was timely as to 1986. To reflect the foregoing, Appropriate orders granting respondent's Motion for Summary Judgment in part will be made, and decisions will be entered for respondent except with respect to the *187 conceded additions to tax under section 6651 for 1987. Footnotes
1. Cases of the following petitioners are consolidated herewith: Michael J. Houston, docket No. 9553-92; Michael J. Houston, docket No. 9554-92; and Michael J. and Sharon D. Houston, docket No. 9559-92.↩