PROST, Chief Judge,
dissenting.
The Internal Revenue Service (“IRS”) normally has three years after a return is filed in which to assess tax, but under the Internal Revenue Code (“I.R.C.” or “Code”) § 6501(e)(1) that period is extended indefinitely “in the case of a false or fraudulent return with the intent to evade tax.” The majority construes § 6501(c)(1) to encompass only the intent of the taxpayer and not the intent of the taxpayer’s hired tax professional. In my view, the *1358 statute means what it says: the three-year limitation does not apply if the intent to evade tax manifests in a fraudulent return.
The majority eschews the statute’s plain meaning based on “[a] survey of other fraud-related provisions of the Code,” which “contemplate fraud by the taxpayer” only. Majority Op. at 1344 (emphasis omitted). But all this survey reveals is that Congress can write a provision that explicitly applies only to taxpayer fraud. Some Code sections concern only the taxpayer’s intent to evade tax, and other rules also encompass the intent of the taxpayer’s hired professionals. In the case of § 6501(c)(1), Congress did not limit the statute to the taxpayer’s intent. Thus, I respectfully dissent.[1]
I. Plain Meaning
I begin, as I must, with the standard for construing § 6501(c)(1): “Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.” E.I. DuPont De Nemours & Co. v. Davis, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924). As a corollary, “limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government.” Badaracco v. Comm’r, 464 U.S. 386, 392, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (quoting Lucia v. United States, 474 F.2d 565, 570 (5th Cir.1973)). The majority brushes this standard aside by distinguishing the circumstances of Badaracco in a footnote. Majority Op. at 1344 n. 5. But the distinction is irrelevant — Badaracco states a general standard “long ago pronounced” by the Supreme Court and reiterated in every case since. Badaracco, 464 U.S. at 391, 104 S.Ct. 756; see DuPont, 264 U.S. at 462, 44 S.Ct. 364; Lucas v. Pilliod Lumber Co., 281 U.S. 245, 249, 50 S.Ct. 297, 74 L.Ed. 829 (1930).
With this pro-government rule of construction in mind, I “naturally turn first to the language of the statute.” Badaracco, 464 U.S. at 392, 104 S.Ct. 756. I.R.C. § 6501(a) states the general statute of limitations: “Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed.... ” Subsection c provides an exception: “In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.” I.R.C. § 6501(c)(1).
The key phrase is “a false or fraudulent return with the intent to evade tax.” Significantly, the statute’s plain language does not limit the intent to evade tax to only the taxpayer’s intent. Rather, the “return” possesses “the intent to evade . tax.” Therefore, the obvious construction of the statutory text is that the intent to evade tax must be present in a false or fraudulent return, irrespective of who possesses that intent. This plain reading of the statute is bolstered by the pro-government canon of construction for statutes of limitations. See Badaracco, 464 U.S. at 391-92, 104 S.Ct. 756.
I need proceed no further. Indeed, the “cardinal canon” of statutory construction is that “courts must presume that a legislature says in a statute what it means and means in a statute what it says there. *1359 When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.” Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The text of § 6501(c)(1) places no limits on who must have the intent to evade tax. The statute is unambiguous.
II. OtheR Tax Code Sections
The majority’s response to the plain meaning of the statute is to “examin[e] that language in light of its place in the statutory scheme.” Majority Op. at 1343. Of course, the context in which a phrase appears adds to its meaning. See Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (“The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.”). I have already considered the context of “intent to evade tax” above in discussing the surrounding language in § 6501(c)(1) and in § 6501 generally. The majority goes further, and searches the entire tax code for other mentions of “the intent to evade tax.” In fact, the sections cited by the majority for “context” are not even in the same chapter as § 6501. This is not analogous to the three cases cited by the majority for the importance of analyzing statutory language in context. In all three cases, the Supreme Court considered only closely proximate statutory provisions.
Even so, a review of the other Code sections discussed by the majority reveals only that Congress knows how to explicitly limit the intent to evade tax to the taxpayer. Adopting my interpretation of .“the intent to evade tax” does not cause the phrase to be used inconsistently. For example, take I.R.C. § 7454(a), on which the majority relies. Section 7454(a) states that “[i]n any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary.” I.R.C. § 7454(a) (emphasis added). Unlike § 6501(c)(1), § 7454(a) is expressly limited to cases where the government alleges that the taxpayer had fraudulent intent. The reason for this limitation is simple: before § 7454(a) was enacted in 1928, the taxpayer had to prove that he did not act with intent to evade tax. Congress shifted the burden of proof on taxpayer fraud to the government because “[pjroceedings before the board involving that issue in some respects resemble penal suits.” S. Rep. 960, 70th Cong., 1st Sess., at 38 (May 1, 1928). This concern does not apply if another’s alleged intent to evade tax is at issue. Therefore, if anything, § 7454(a) demonstrates that Congress only limits the intent to evade tax to the taxpayer’s intent in specific circumstances. Without such express limitation, the intent to evade tax encompasses others who cause a return to be fraudulent.
Consider also § 6229(c)(1), which involves the statute of limitations for assessing tax to partnerships. Section 6229(c)(1) applies “[i]f any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item.... ” (Emphasis added). As in § 7454(a), Congress expressly restricted the intent to evade tax to a specific individual — in the case of § 6229(c)(1), a “partner.” Again, this shows that Congress can limit “the intent to evade tax” to the taxpayer’s intent if it so wishes. If “the intent to evade tax” encompasses only *1360 the taxpayer’s intent — as advocated by the majority — the restrictions to “the petitioner” in § 7454(a) and to “any partner” in § 6229(c)(1) would be superfluous. The majority’s construction thus violates the “cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute. ...” See Williams v. Taylor, 529 U.S. 362, 364, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
The majority also places heavy reliance on § 250 of the Revenue Act of 1918. Majority Op. at 1347-50. First, the import of a nearly 100 year old statute on the meaning of a different statute today is slight. Second, § 250 falls into the same pattern outlined above — when Congress wants to limit intent elements to the taxpayer’s intent, it does so expressly. Section 250(b), which outlined penalties applicable to erroneous returns, stated in part: “In such case if the return is made in good faith and the understatement of the amount in the return is not due to any fault of the taxpayer, there shall be no penalty because of such understatement.” Revenue Act of 1918 § 250(b), Pub.L. No. 54-254, 40 Stat. 1057 (emphasis added). Section 250(b) went on to provide a five percent penalty “[i]f the understatement is due to negligence on the part of the taxpayer, but without intent to defraud,” and a fifty percent penalty “[i]f the understatement is false or fraudulent with intent to evade the tax....” Id. (emphasis added). This section, which referenced the taxpayer twice, assigned tax penalties to the taxpayer based only on the taxpayer’s intent.
On the other hand, the statute of limitations, § 250(d), did not mention the taxpayer. Section 250(d) stated, “[ejxcept in the case of false or fraudulent returns with intent to evade the tax, the amount of tax due under any return shall be determined and assessed by the Commissioner within five years after the return was due or was made_” Id. (emphasis added). Therefore, because § 250(d) did not limit the intent to evade tax to the taxpayer’s intent as in § 250(b), the statute of limitations did not apply to fraudulent returns involving the intent to evade tax generally.
The majority interprets § 250 differently. According to the majority, because only the taxpayer’s intent is at issue in § 250(b), the general reference to “intent to evade the tax” in § 250(d) must also be limited to the taxpayer’s intent. However, I do not find this conclusion to be “abundantly clear.” Majority Op. at 1349. It is equally reasonable — if not more reasonable — to assume that the intent inquiry is restricted to the taxpayer’s intent only where the statutory subsection explicitly refers to the taxpayer’s intent, as in § 250(b). Granted, § 250(b) is certainly relevant context for construing § 250(d). But given that Congress did not restrict the intent element in § 250(d) to the taxpayer’s intent — as it did in § 250(b) — the requisite intent to evade the tax could be found in others, such as tax professionals hired by the taxpayer. Finally, if there is any remaining doubt, we must turn to the standard for construction, which requires that we strictly construe § 6501(c)(1) in favor of the government. See Badaracco, 464 U.S. at 392, 104 S.Ct. 756.
III. Purpose Of § 6501(c)(1)
Indeed, it makes perfect sense to impose penalties on the taxpayer only when the taxpayer intended to evade the tax, while at the same time allowing the IRS to collect taxes based on an understated fraudulent return at any time. Given that the taxpayer must pay any tax penalty, *1361 Congress may reasonably only intend to penalize the taxpayer when the taxpayer is culpable. See I.R.C. § 6664(c)(1) (excepting taxpayers from the penalty if “there was a reasonable cause” for the underpayment and they “acted in good faith”). A different rationale applies to the statute of limitations. Excepting fraudulent returns from the statute of limitations does not penalize the taxpayer because the taxpayer must only pay the taxes it properly owed. It is thus inconsequential whether the taxpayer perpetrated the fraud or whether another individual is responsible. Moreover, “fraud cases ordinarily are more difficult to investigate than cases marked for routine tax audits. Where fraud has been practiced, there is a distinct possibility that the taxpayer’s underlying records will have been falsified or even destroyed.” Badaracco, 464 U.S. at 398, 104 S.Ct. 756. Thus, the lack of a statute of limitations for fraudulent returns with intent to evade tax in § 6501(c)(1) (and § 250(d)) reasonably compensates the government for the unique difficulty involved in discovering fraud and determining the taxpayer’s true tax liability.[2]
Finally, this case matters. The majority removes a key tool from the IRS’s toolbox for policing the submission of fraudulent tax returns. Nearly all taxpayers with significant sums at issue employ a tax preparer. Often, the IRS uncovers fraudulent returns by discovering the tax professionals who perpetrate fraud. It is not an easy matter to discover fraud, fully investigate it, and determine the proper tax liability within three years. See id. It is even more difficult to prove that a taxpayer knew of a tax professional’s fraud and acted with intent to evade tax. Nonetheless, the majority ties the IRS’s hands behind its back — without impossibly speedy sleuthing or smoking gun evidence, the IRS cannot collect taxes owed and the perpetrators make away scot free.
IV. Conclusion
To summarize, the majority asserts that “the intent to evade tax” in § 6501(c)(1) concerns only the taxpayer’s intent because Congress — using different language in different context in other chapters of the Code — expressly limits the intent to evade tax to the taxpayer’s intent. I disagree. Congress “says in a statute what it means and means in a statute what it says there.” Conn. Nat’l Bank, 503 U.S. at 253-54, 112 S.Ct. 1146. Here, Congress says that § 6501(c)(1) applies “in the case of a false or fraudulent return with the intent to evade tax.” I.R.C. § 6501(c)(1). Nowhere does Congress limit § 6501(c)(1) to only those circumstances where the taxpayer has the intent to evade tax. In this case, it is undisputed that Mayer, the taxpayer’s lawyer, acted with the intent to evade tax and caused the return to be fraudulent. Accordingly, I conclude that the BASR return is fraudulent “with the intent to evade tax,” such that “the tax may be assessed ... at any time.” I.R.C. § 6501(c)(1).

. On the threshold issue of which statute applies, I conclude that § 6501(c)(1), not § 6229(c)(1), is the relevant law. I therefore join footnote 1 of the majority opinion.

. Indeed, in this case the government contends that numerous additional transactions were performed purely "to throw off suspicion.” See Appellant's Br. 45-47.