**UNITED STATES of America, Plaintiff,**

v.

**Floyd FLAKE, Wilburn Holland, Allen A.M.E. Housing Development Fund Corporation, Allen A.M.E. Church, and Allen Christian School Inc., Defendants.**

**No. CV 90 4047.**

United States District Court,
E.D. New York.

Jan. 29, 1992.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y. (Charles S. Kleinberg, Asst. U.S. Atty., of counsel), for plaintiff.

Fisher & Fisher, New York City (Vivian Shevitz, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

The United States brought this action to recover funds transferred from a federally-funded Department of Housing and Urban Development ("HUD") housing project to a

church school. This court has jurisdiction under 28 U.S.C. §§ 1331, 1345.

Defendants move to dismiss the complaint on the grounds that it fails to state a claim and is time barred. In accordance with Federal Rule of Civil Procedure 12(b)(6) the court treats the motion as one for summary judgment under Rule 56 and has considered matters outside the pleadings. Both parties had notice that the court would do so, and neither party objects.

## I.

There are five defendants. Defendant Allen A.M.E. Housing Development Fund Corporation ("Allen Housing") is a non-profit corporation located in Jamaica, New York. Defendant Allen A.M.E. Church ("Allen Church") is a religious corporation also located in Jamaica, New York. Defendant Allen Christian School Inc. ("Allen School") is a corporation owned and controlled by Allen Church. Defendant Floyd Flake ("Flake") was chairman of Allen Housing and Pastor and a Trustee of Allen Church. Defendant Wilburn Holland ("Holland") was vice chairman of Allen Housing and a Trustee of Allen Church.

Under Section 202 of the Housing Act of 1959, as amended, 12 U.S.C. § 1701q, the Secretary of HUD (the "Secretary") may lend money to nonprofit corporations to provide housing and "related facilities" for the elderly or handicapped. 12 U.S.C. § 1701q(a)(1). The statute defines "related facilities" to include various "essential service facilities." 12 U.S.C. § 1701q(d)(8). The Secretary determines how the loans will be secured. HUD requires a valid first mortgage lien on the project, and each borrower must execute a Regulatory Agreement specifying the parties' rights and obligations under the statute and regulations. 24 CFR § 885.415.

In 1979 Allen Housing applied to HUD for funds to build a housing project for the elderly. On May 14, 1979, Allen Housing and HUD entered into a Regulatory Agreement governing the terms of the loan. HUD received a mortgage on the project, the income and assets of which were assigned to HUD as security. Pursuant to the statute and regulations, HUD required all receipts of the project to be deposited in the name of the project in a federally insured bank and removed only for project expenses.

Between 1980 and 1982, defendants withdrew approximately $532,000 from Allen Housing and lent it to Allen Church. At the same time Allen Housing lent Allen Church an additional $15,800 to purchase a minivan. Allen Church in turn loaned the $532,000 to Allen School to help fund the construction of a multipurpose center, to be used by the school during school hours. Defendants claim that elderly persons use this center at other times. But the record does not make clear the extent of this use.

In 1984 Flake talked to Alexander Naclerio, then Director of Housing of HUD in New York, about the possibility of exempting the Allen School from repayment of the $532,000. On January 23, 1984, Flake confirmed these discussions and wrote to Naclerio formally requesting the exemption. Flake explained that the multipurpose facility was planned as a place where senior citizens could sponsor events, activities, and programs to enhance their living in the community, in particular to allow them to work with students within the complex.

The United States admits that Naclerio approved this request some time in June 1984. Because the letter confirming the approval apparently contained a misprint, a second letter, this one dated September 21, 1984 and signed by David F. Buchwalter, a subordinate of Naclerio and Chief of the Loan Management Branch, was sent to Flake confirming the approval. Allen Housing formally forgave the loan in 1985.

On December 20, 1988, the acting Director for Housing of HUD in New York wrote Allen Housing referring to the fact that by the September 21, 1984 letter "HUD approved a request" that the $532,000 not be repaid but saying "[u]pon consideration of the information provided to this office, it appears that the funds in question should not have been advanced" to the Allen School. The letter instructed Allen Housing to "have these funds restored" to the project and "assure that

they are used for the purposes authorized by the Regulatory Agreement."

On November 26, 1990, the United States Attorney brought this action alleging five claims. The first and second claims allege violations of 12 U.S.C. § 1701q, the applicable regulations, and the Regulatory Agreement. Claim Three alleges breach of a contract, presumably the Regulatory Agreement, and conspiracy to breach a contract. Claim Four alleges unjust enrichment, and Claim Five seeks a constructive trust against Allen Church and Allen School.

The complaint demands (1) twice $532,-000, plus interest, plus plaintiff's auditing fees, plus costs including attorney's fees, and (2) a judgment declaring that Allen Church and Allen School hold in trust "for the benefit of HUD and the project" $532,-000 plus interest, and directing that no property bought or improved with the use of project funds be conveyed or further encumbered.

Defendants' motion for summary judgment urges that (1) the transfer to the Allen School was proper under the statute, (2) in any event Naclerio's approval waived any impropriety, and (3) the claims are barred by the statute of limitations or by estoppel.

## II.

■ While there may be instances in which the government will be estopped from making a claim, this is not one of them. Estoppel would be particularly inappropriate to allow expenditures of public funds that are not authorized by statute. *Office of Personnel Management v. Richmond*, 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Here, estoppel would leave unredressed an alleged unauthorized diversion of federal funds that the law allocated to benefit elderly and handicapped families. Even where federal funds have been paid out, the United States is not estopped from seeking to restore them to their proper use. *See, e.g., United States v. Fowler*, 913 F.2d 1382, 1385–86 (9th Cir. 1990) (United States not estopped from re-

covering money paid to persons ineligible for federal flood insurance).

## III.

■ As noted above, under 12 U.S.C. § 1701q(a)(2) the Secretary of HUD is authorized to make loans "for the provision of rental or cooperative housing and related facilities for elderly or handicapped families." Subsection (d)(8) of that section says, in pertinent part, that "related facilities" means "new structures suitable for use" by elderly or handicapped families resident in the project or the area "as cafeterias or dining halls, community rooms or buildings, workshops ... or other essential service facilities."

Defendants say that the multipurpose center is a "related facility" and that the transfer was thus consistent with the statute and regulations. It seems unlikely that the ends to be served by this housing legislation would be satisfied by a structure primarily given over to a school. Moreover, to interpret the statute and regulations to authorize the disbursement of federal funds for day time use as a sectarian school would be to raise constitutional questions under the Establishment Clause of the First Amendment.

In any event, if the center qualifies as a "related facility", Allen Housing did not comply with the regulations' prerequisites. When a related facility receives federal funds, the borrower must provide HUD with a note and a first mortgage or deed of trust on the "project," including the related facility's structure, and a title policy ensuring that the mortgage constitutes a first lien on the "project." 24 CFR § 885.415. Allen Housing did not meet these requirements.

## IV.

■ Defendants argue that HUD's approval of the loan forgiveness amended the regulatory agreement and, presumably, waived compliance with the prerequisites to the use of the funds for the alleged "related facility." Whether Naclerio's approval constituted such an amendment or waiver

depends upon, among other things, whether he had the authority to do so.

Defendants say he had such authority because both 12 U.S.C. § 1701c and 24 CFR § 200.50 permitted the Secretary to "delegate any of his functions, powers, and duties to such officers and employees of the Department as he may designate." But defendants do not cite any directive delegating the authority to Naclerio or to a person with the title he held.

The Secretary has made formal delegations in 24 CFR §§ 200.50 through 200.129. Under 24 CFR § 200.118(e)(1), the Secretary delegated to the position of "Area Director in each HUD Area Office", and "to the position of Deputy", the authority and function to "approve or disapprove loans for housing for the elderly or handicapped" and "to make contracts and execute documents in connection therewith." This section, which has not been amended since 1977, makes no reference to a title Naclerio had.

Defendants have not shown on the present papers that Naclerio had the functions of an "Area Director" or "Deputy Area Director" as contemplated by the regulation. The court thus cannot find on this motion for summary judgment that he had the authority defendants claim for him.

### V.

### A.

■ Defendants say that each of the claims is time barred. The first claim asserts the right under 12 U.S.C. § 1715z–4a(a)(1) to recover any assets or income "used" by any person in violation of the Regulatory Agreement or the regulations. That section authorizes the Secretary to request the Attorney General to bring such an action.

The statute of limitations defense is based on § 1715z–4a(d), which provides that "[n]otwithstanding any other statute of limitations, the Secretary [of HUD] may request the Attorney General to bring an action under this section at any time up to and including 6 years after the latest date that the Secretary discovers any use of project assets and income in violation of" the Regulatory Agreement or the regulations.

Defendants have the burden on this motion to show that the requisite "discovery" of the prohibited "use" was made more than six years before the filing of the complaint on November 26, 1990. The issue turns on whether Naclerio's knowledge in June 1984 is a "discovery" binding on HUD.

■ The court does not read § 1715z–4a(d) to require that the Secretary in person "discover" the unauthorized use of funds before the commencement of the six year limitation period. To hold that only he could make the discovery would mean as a practical matter that there would be few, if any, instances in which the period would run. Moreover, it seems unlikely that those who drafted the legislation supposed the Secretary would be called upon to designate official "discoverers". In any event the Secretary has not done so.

The court must therefore read the statutory language to make a sensible accommodation between the purpose of the statute of limitation to afford repose after the passage of time and the reasonable needs of HUD as an institution to realize within a six year period that it may have a claim.

In other contexts the courts have applied the principles of common law agency to determine whether the United States has received a notice binding upon it. For example, in *United States v. Currency Totalling $48,318.08*, 609 F.2d 210, 214–15 (5th Cir.1980), neither the legislative nor the executive branches of the government had designated a specific individual or office to receive notice of interests adverse to the United States in a forfeiture proceeding. The court, referring to the Restatement (Second) of Agency § 268 (1958), said that such notice would be sufficient if given to a government official who has authority in connection with the subject matter "to take some action upon it, or to inform the principal or some other agent who has duties in regard to it."

In *In re Agent Orange Product Liability Litigation,* 597 F.Supp. 740, 796 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2nd Cir.1987), the court applied principles of agency law to find the United States chargeable with knowledge of the dangers of Agent Orange. The court held that knowledge in the possession of a government employee "who has a duty to transmit or receive the information is knowledge in the possession of" the United States or its appropriate department. As the Restatement (Second) of Agency § 275 states, the principal is chargeable with "knowledge which an agent has a duty to disclose to the principal or to another agent of the principal to the same extent as if the principal had the information."

This is the sensible test to apply in this case. There is no good reason why the court should impose double liability, attorney's and accountant's fees and other costs without requiring HUD to take action within six years after a senior administrator learns of a transfer of HUD funds to another entity and has a duty to share this knowledge with his superior.

The United States argues that only a HUD official who has authority to sign the Regulatory Agreement can make the requisite "discovery" because under § 1715z-4a(d) it is the "Secretary" who must make a request of the Attorney General and it is also the "Secretary" who must "discover" the use of the assets. In § 200.84b of the Regulations the Secretary delegated to the positions of Regional Administrator and Deputy Regional Administrator the "authority and function to direct and supervise" within the area under his jurisdiction "all activities" assigned to the Assistant Secretary.

It does not follow that because the Secretary delegated authority to the officials in one or two positions to "direct and supervise" "activities" he restricted to those persons the responsibility for passing on information that HUD requires in order to take appropriate and timely action. Indeed, in the context of statutes of limitations, notice of improper use of government funds is

hardly an "activity". In most instances the recipient of notice will be entirely passive.

Naclerio's title of Director of Housing of HUD in New York implies that the position is a reasonably responsible one and that notice to the incumbent in that position would be sufficient under the criteria discussed above to start the limitation period running. But the present record does not show precisely what functions and responsibilities Naclerio had. A decision on that question must await discovery.

The United States suggests, rather belatedly, that Naclerio was a conspirator with defendants. Plainly if he deliberately conspired in what he knew to be unlawful use of HUD funds his knowledge cannot be charged to the United States.

The United States suggests no evidentiary basis for its supposition that Naclerio was unfaithful. If there was a conspiracy, Buchwalter, the Chief of the Loan Management Branch who confirmed in writing the approval of the use of the funds, presumably was a member. The court cannot decide the issue on the present papers.

The United States also argues that the first claim is not barred because the six year limitation period did not begin to run until 1985 when Allen Housing, pursuant to Naclerio's approval in June 1984, waived repayment of the loan by the Allen School. By the terms of § 1715z-4a(a)(1) the action to which the six year limitation applies is an action to recover assets "used by any person" in violation of the Regulatory Agreement or any applicable regulation. The alleged "improper" use of the housing project's funds took place when the transfer was made to the Allen Church and the Allen School. The right of action, if any there was, accrued at that time. The subsequent forgiveness of the loan in 1985 did not make the previous "use" any less improper, and in this court's view there was no new "use" in 1985.

**B.**

 Claims two, three and four seek damages based on breach of an express or implied contract. To the extent these claims do not assert liability under

§ 1715z–4a(a)(1) and thus are not subject to the limitation period provided in § 1715z–4a(d), they are governed by 28 U.S.C. § 2415(a). Section 1715z–4a(e) provides that "[t]he remedy provided by this section is in addition to any other remedies available to the Secretary or the United States".

In pertinent part, 28 U.S.C. § 2415(a) provides that "every action for money damages brought by the United States ... which is founded upon any contract express or implied in law or fact shall be barred unless the complaint is filed within six years after the right of action accrues" or one year after a final administrative decision is rendered, whichever is later. Under 28 U.S.C. § 2416(c) the computation of this six year limitation period requires the exclusion of "all periods during which ... facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances."

Under this section, the court must decide when the material facts "first became known to responsible officials charged with investigation of" the allegedly improper acts. *Jankowitz v. United States,* 533 F.2d 538, 548–49, 209 Ct.Cl. 489 (1976). *See also United States v. Government Development Bank,* 725 F.Supp. 96, 99–100 (D.P.R.1989).

Here the breach of contract, whether express or implied, occurred when the funds were transferred for construction of a building to house a school. Since Naclerio had knowledge of this material fact in 1984, the analysis of the appropriate limitation period is not significantly different from that applicable to the first claim.

### C.

■ The timeliness of claim five, which seeks to impress a constructive trust, is governed by quite different principles. An action to impress a trust on behalf of the United States is not covered by any federal statute of limitations; nor will laches bar a suit by the United States. *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Guaran-*

*ty Trust Company of New York v. United States,* 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). Of course, state statutes of limitation do not apply. Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3652 and cases cited.

■ The claim is not barred by 28 U.S.C. § 2415(b), providing a six year statute of limitations for "an action to recover for diversion of money paid under a grant program." That provision applies only to actions for "money damages", not to the equitable remedy of a constructive trust. *Cf. United States v. City of Palm Beach Gardens,* 635 F.2d 337 (5th Cir.1981) (§ 2415(b) not a bar to a statutory claim to recover federal funds paid to state agencies to construct medical facilities when the funds were initially used for that purpose but later transferred to entity unqualified for a grant). *Accord, United States v. St. John's General Hospital,* 875 F.2d 1064 (3d Cir.1989).

The court holds that the claim for a constructive trust is not barred. This claim is brought only against Allen Church and Allen School, but may only be enforced against the party holding the asset.

### VI.

The court has considered the other contentions made by defendants and finds they do not present grounds for summary judgment.

Defendants' motion for summary judgment is denied.

So ordered.