UNITED STATES of America,
Plaintiff,

v.

ENVICON DEVELOPMENT CORPORATION, et al.,
Defendants.

No. CIVA3:97CV2703(JCH).

United States District Court,
D. Connecticut.

March 27, 2001.

William A. Collier, U.S. Attorney's Office, Hartford, CT, for plaintiff.

Edward P. Loughlin, Charles Phillip Reed, Loughlin, FitzGerald, Kamp, Henrici, Wallingford, CT, Kenneth F. Nye, John F. Redwine, Dallas, TX, for Gene E. Phillips, Oscar W. Cashwell, defendants.

Thomas A. Rouse, Aimee Jennifer Wood, Pullman & Comley, Bridgeport, CT, Peter J. Riley, Julia E. Jones, Thompson & Knight, Dallas, TX, for Donald W. Hair, Glen Adams, defendants.

Michael J. Donnnelly, Robert A. White, Jessica Brooke Gauvin, Murtha Cullina LLP, Hartford, CT, for McNeil Re Mgmt, Inc., defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 143, 149, 152]

HALL, District Judge.

The plaintiff, on behalf of the Secretary of the Department of Housing and Urban Development ("HUD"), brought suit under 12 U.S.C. § 1715z–4a to recover misappropriated funds and damages resulting from the improper use of assets and income derived from Mill Pond Village, a multifamily housing complex located in Connecticut and whose mortgage is insured by HUD under Title II of the National Housing Act. The owner and manager of the property is Mill Pond Village Associates ("MPVA"), a limited partnership formed pursuant to Connecticut law and registered in the state of Connecticut.

The defendants remaining in the suit are McNeil Real Estate Management Corporation, the former property manager of Mill Pond Village; Gene Phillips, former president and chairman of Southmark Corporation; and Oscar Cashwell, former assistant to the president of Southmark.[1] Southmark was a majority shareholder of Envicon Capital Corporation, which owned Envicon Development Corporation, the general partner of MPVA.

Pending before the court are the motions for summary judgment of Phillips and Cashwell [Dkt. No. 143] and McNeil [Dkt. No. 149], and the motion for partial summary judgment against McNeil only of the plaintiff [Dkt. No. 152]. In support of their motion, Phillips and Cashwell argue that: (1) the suit is barred by the applicable statute of limitations under subsection 1715z–4a(d); (2) Phillips and Cashwell are not persons within the definitional section of section 1715z–4a; (3) any liability Phillips and Cashwell faced ended when they left Southmark; and (4) the plaintiff cannot establish that Phillips and Cashwell benefitted personally from, or had knowledge of, any disbursements of funds by MVPA in violation of section 1715z–4a. In support of its motion, McNeil argues that

---

1. The plaintiff originally sued several other individual defendants, which claims were either voluntarily dismissed, settled, or dismissed for failure to state a claim. *See* Ruling (Dkt. No. 116).

(1) the suit is barred by the applicable statute of limitations under subsection 1715z–4a(d); (2) the issue of McNeil's liability is barred by *res judicata* from MPVA's bankruptcy proceedings in the Northern District of Texas; and (3) McNeil is not liable under section 1715z–4a because the majority of the funds at issue as having been improperly used or disbursed by the defendants were held in a retainer trust account with MPVA's bankruptcy attorneys that was available for use by MPVA during the time McNeil managed Mill Pond Village. The plaintiff seeks summary judgment against McNeil only on McNeil's liability for double damages under section 1715z–4a. For the reasons discussed herein, the motion of Phillips and Cashwell [Dkt. No. 143] is GRANTED, the motion of McNeil [Dkt. No. 149] is DENIED, and the plaintiff's motion [Dkt. No. 152] is GRANTED.

## I. FACTS

■ The following facts are undisputed.[2] MPVA is a 360–unit apartment complex in Broad Brook, Connecticut, with a mortgage held by the Connecticut Housing Finance Authority ("CHFA") and insured by the Secretary of HUD. MPVA is a limited partnership formed to own Mill Pond Village. By the late 1980s, Envicon Development was the sole general partner in MPVA. McNeil was the property manager of Mill Pond Village for most of 1991, until a bankruptcy court order substituted SHL General Partner II, Ltd. as property manager on September 27, 1991.

In June 1974, MPVA entered into a Regulatory Agreement ("Regulatory Agreement" or "Agreement") with the Secretary of HUD in order to receive mortage insurance from HUD. This Regulatory Agreement provided, in part:

> Owners [MPVA] shall not file any petition for bankruptcy or for a receiver or in insolvency or for reorganization or composition, or make any assignment for the benefit of creditors or to a trustee for creditors, or permit an adjudication in bankruptcy or the taking possession of the mortgaged property or any part thereof by a receiver or the seizure and sale of the mortgaged property or any part thereof under judicial process or pursuant to any power of sale, and fail to have such adverse actions set aside within forty-five (45) days.

McNeil's Statement of Undisputed Facts (Dkt. No. 151), Ex. G at ¶ 8. The Regulatory Agreement thus expressly forbade MPVA from filing for bankruptcy.

The Agreement further provides, in pertinent part:

> Upon a violation of the above provisions of this Agreement by Owners [MPVA], the Secretary may give written notice, thereof, to Owners, by registered or certified mail.... If such violation is not corrected to the satisfaction of the Secretary within thirty (30) days after the date such notice is mailed or within such further time as the Secretary determines is necessary to correct the violation, without further notice the Secretary may declare a default under this

---

**2.** McNeil did not file a Local rule 9(c)2 Statement in connection with its Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 160]. The plaintiff argues that the factual allegations of the plaintiff's Rule 9(c)1 Statement must therefore be deemed admitted by McNeil. *See* Plaintiff's Reply Memo. (Dkt. No. 164) at 1–2. The court declines to so hold because, to the extent these factual allegations are disputed by McNeil, McNeil has effectively disputed the plaintiff's statement of undisputed facts in McNeil's own Rule 9(c)1 Statement submitted in connection with McNeil's Motion for Summary Judgment covering the same issues as the plaintiff's Motion. *See* McNeil's Statement of Undisputed Facts (Dkt. No. 151).

Agreement effective on the date of such declaration of default and upon such default the Secretary may:

. . . . .

(d) Apply to any court, State or Federal, for ... such other relief as may be appropriate....

*Id.* at ¶ 11. The Agreement defines "project" as "the mortgage property and all its other assets of whatsoever nature or whatsoever situate, used in or owned by the business conducted on said mortgaged property, which business is providing housing and other activities as are incidental thereto." *Id.* at ¶ 13(e).

On June 11, 1991, MPVA, acting through McNeil, transferred $125,000 to a retainer account at Akin, Gump, Hauer & Feld and separately on June 11, 1991, $10,000 and $11,000 to retainer accounts at Murtha, Cullina, Richter & Pinney. A bankruptcy proceeding for MPVA, titled *In re: Mill Pond Village Associates,* was filed under Chapter 11 in the United States Bankruptcy Court for the Northern District of Texas on June 12, 1991. Officials at the Hartford HUD officer became aware of MPVA's filing of a bankruptcy petition no later than July 8, 1991.[3] HUD received a Notice of Hearing of Debtor's Application to Approve Employment of Attorneys [McNeil's Statement of Undisputed Facts (Dkt. No. 151), Ex. D] related to the MPVA bankruptcy no later than July 15, 1991. HUD also received copies of the First Motion of Akin, Gump, Hauer & Feld for Distribution of Retainer [McNeil's Statement of Undisputed Facts (Dkt. No. 151), Ex. B], filed in the bankruptcy court

on September 13, 1991 and received by HUD on the same day, and Second Motion of Akin, Gump, Hauer & Feld for Distribution of Retainer [McNeil's Statement of Undisputed Facts (Dkt. No. 151), Ex. C], filed in the bankruptcy court on October 11, 1991 and received by HUD on the same day. These documents were then forwarded to HUD's legal department.

In May 1992, HUD received a May 19, 1992 letter transmitting an audit of MPVA, which audit reflected the payments transmitted to Akin, Gump and Murtha, Cullina from project funds at a time when MPVA was not in a surplus cash position. The plaintiff filed the instant action on December 24, 1997.

From the early 1980s until January 17, 1989, Phillips was president and chairman of Southmark. On January 17, 1989, Phillips resigned from Southmark and ended any affiliation therewith. From the early 1980s until January 17, 1989, Cashwell was an assistant to Phillips at Southmark. Cashwell resigned from Southmark, and ended any affiliation therewith, on June 1, 1989.

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.,* 221 F.3d 293, 300 (2d Cir.

---

**3.** The Plaintiff's Rule 9(c)2 indicates that the Hartford office learned of the filing of MPVA's bankruptcy petition "on or about July 8, 1992," repeating the date set forth in the Rule 9(c)1 Statement of Phillips and Cashwell [Dkt. No. 145]. Plaintiff's Consolidated Response to Defendants 'Statements of Undisputed Facts (Dkt. No. 159) at 7'. The court inter-

prets this to be a scrivener's error, because the defendants' Rule 9(c) 1 Statement and the plaintiff's Rule 9(c)2 Statement use the date July 8, 1991 for the same purposes two paragraphs later. *Id.* at 7–8; Phillips and Cashwell's Local Rule 9(c)1 Statement (Dkt. No. 145) at ¶¶ 8, 10. Both parties agreed at oral argument that this is a scrivener's error.

2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting Fed.R.Civ.P. 56(c)). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505).

■ "[I]f after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," summary judgment is appropriate. *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir.2000) (internal quotation marks omitted) (quoting *Berger v. United States*, 87 F.3d 60, 65 (2d Cir.1996)). "The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. Instead, the non-movant must produce specific facts indicating 'that a genuine factual issue exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted.' To defeat a motion, there must be evidence on which the jury could reasonably find for the [non-moving]." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) (citations omitted).

"In deciding the motion, the trial court must first resolve all ambiguities and draw all inferences in favor of the non-moving party, and then determine whether a rational jury could find for that party." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000). "If reasonable minds could differ as to the import of the evidence, ... and [i]f ... there is any evidence in the record from any source from which a reasonable inference in the [non-moving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir.1997) (internal quotation marks omitted) (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir.1988)).

"At the same time, the non-moving party must offer such proof as would allow a reasonable juror to return a verdict in his favor...." *Graham*, 230 F.3d at 38. A plaintiff may not create a genuine issue of material fact by presenting unsupported statements or "sweeping allegations." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir.1997). The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. The motion 'will not be defeated merely ... on the basis of conjecture or surmise.'" *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996) (citations omitted); *see also* Fed.R.Civ.P. 56(e) (a non-moving party "may not rest upon the mere allegations or denials of the [non-moving] party's pleading").

## III. DISCUSSION

### A. Statute of Limitations

■ The court turns first to the statute of limitations defense raised by all three defendants. The defendants allege that the plaintiff did not file its action within the applicable limitation period of six years under 12 U.S.C. § 1715z–4a(d). Section 1715–4a(d) provides:

Notwithstanding any other statute of limitations, the Secretary may request the Attorney General to bring an action under this section at any time up to and including 6 years after the latest date that the Secretary discovers any use of project assets and income in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, or any applicable regulation.

It is undisputed that the plaintiff filed the instant action on December 24, 1997.

According to the defendants, HUD, through its agents and officials, discovered or should have discovered the defendants' violation of section 1715z–4a prior to December 24, 1991, and the action is therefore barred. The "[d]efendants have the burden on this motion to show that the requisite 'discovery' of the prohibited 'use' was made more than six years before the filing of the complaint. . . ." *United States v. Flake,* 783 F.Supp. 762, 766 (E.D.N.Y. 1992). The discovery must have been made by a HUD official who at least had responsibility to share the knowledge of the discovery with a superior administrator at HUD. *See id.* at 766–67.

The plaintiff alleges that HUD did not discover the defendants' section 1715z–4a violation until HUD received a May 19, 1992, letter transmitting the results of an audit of MPVA. The plaintiff alleges that "the statute requires that the misuse of project assets and income be discovered." Plaintiff's Consolidated Memo. in Opposition (Dkt. No. 158) at 6. The plaintiff asserts that, prior to receiving this letter and the attached audit report, HUD did not know that MPVA used project funds in violation of section 1715z–4a or that MPVA was not in a surplus cash position in 1991. The plaintiff argues that HUD first became aware of the details of the June 11, 1991 disbursements in 1992, and that the

bankruptcy filings from MPVA's proceedings that HUD received in 1991 did not provide HUD with actual notice of "any use of project assets and income in violation of the regulatory agreement" or purposes of triggering the statute of limitations under subsection 1715z–4a(d). The plaintiff further argues that "[t]he filing of the June 12, 1991 bankruptcy petition may have been a violation of the express language of the Regulatory Agreement, but that violation does not equate with the use of Mill Pond Village's assets and income for other than the reasonable operating expenses and maintenance of the project. In short, the receipt of a notice of hearing regarding a bankruptcy petition does not in and of itself provide knowledge that project funds are being used in violation of a regulatory agreement." *Id.* at 6 n. 5.

There is very little caselaw interpreting or applying subsection 1715z–4a(d). The few cases applying this statute of limitations subsection of section 1715z–4a do not discuss the exact meaning of the phrase "the latest date that the Secretary discovers," and the court's review of the legislative history of this section revealed no useful guidance. The court takes the "latest date" to mean the date the Secretary receives documentation or other information or notice revealing the "any use of project assets and income in violation of the regulatory agreement." An interpretation of "latest date" that allowed the Secretary to effectively push back the date for filing each time HUD discovered additional evidence of the same violation would frustrate the purpose of having a statute of limitations.

Moreover, none of the cases interpreting or applying subsection 1715z–4a(d) discuss whether the phrase "the Secretary discovers any use of project assets and income in violation of" requires actual or simply constructive knowledge. One district court in

this Circuit has held that section 1715z–4a(d) does not "require that the Secretary in person 'discover' the unauthorized use of funds before the commencement of the six year limitation period." *Flake*, 783 F.Supp. at 766. Rather, the *Flake* court interpreted subsection 1715z–4a(d) to require "HUD to take action within six years after a senior administrator learns of a transfer of HUD funds to another entity and has a duty to share this knowledge with his superior." *Id.* at 767. Two other courts seem to have applied, for purposes of the notice to HUD required to trigger the applicable statute of limitations, actual knowledge standards in interpreting subsection 1715z–4a(d). *See United States v. Schlesinger*, 88 F.Supp.2d 431, 439 (D.Md. 2000); *United States v. Harvey*, 68 F.Supp.2d 1010, 1018 (S.D.Ind.1998).

McNeil argues that the court should read in "should have known" or "should have discovered" provisions to the statute of limitations provision in subsection 1715z–4a(d). As McNeil points out, the Second Circuit has done so in other contexts where the text, if any, of a statute of limitations provision did not explicitly include such requirements. *See In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir.1998) (civil RICO statute, 18 U.S.C. § 1962); *Dodds v. Cigna Secs., Inc.*, 12 F.3d 346, 350 (2d Cir.1993) (section 9(e) of the 1933 Securities Act). Moreover, the Second Circuit has joined other circuits in holding that, "[u]nder federal principles, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Long Island Lighting Co. v. Imo Indus. Inc.*, 6 F.3d 876, 887 (2d Cir.1993) (internal quotation marks omitted) (quoting *Bankers Trust*, 859 F.2d at 1103);) *see also Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 342 (D.C.Cir.1991) (collecting cases).

These cases, however, involved statute of limitations provisions applying to causes of actions by private parties, not by the government. The Second Circuit, in the context of a foreclosure action brought by the Small Business Administration, has held that statutes of limitations on causes of action by the government "must receive a strict construction in favor of the Government." *Westnau Land Corp. v. U.S. Small Bus. Admin.*, 1 F.3d 112, 115 (2d Cir.1993) (internal quotation marks omitted) (quoting *Badaracco v. Comm'r*, 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984)). In so doing, the Court of Appeals followed a well-established rule laid down by the Supreme Court: "Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.'" *Badaracco*, 464 U.S. at 391, 104 S.Ct. 756 (quoting *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924)). Indeed, the *Badaracco* Court noted:

> Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement. *See TVA v. Hill*, 437 U.S. 153, 194–195, 98 S.Ct. 2279, 2300–2302, 57 L.Ed.2d 117 (1978). This is especially so when courts construe a statute of limitations, which "must receive a strict construction in favor of the Government." *E.I. Dupont De Nemours & Co. v. Davis*, 264 U.S. at 462, 44 S.Ct. at 366.

*Id.* at 398, 104 S.Ct. 756. The defendants have not cited to any cases involving claims by the government that run counter to these principles, and the court is unaware of any.

Accordingly, the court will not read "should have known" or "should have discovered" provisions into subsection 1715z–4a(d), the text of which does not explicitly contain such provisions. The question

then becomes whether HUD discovered, prior to December 24, 1991, that MPVA was in a non-surplus cash position and had misused project assets and income in disbursing retainer payments to its bankruptcy attorneys, giving rise to liability under section 1715z–4a.

The court concludes the defendants have failed to carry their burden of proof on this issue. The court finds that there is no genuine issue of material fact as to whether HUD actually discovered MPVA's "use of project assets and income in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, or any applicable regulation" prior to December 24, 1991.

The documents discussed above which HUD received prior to this date placed HUD on notice that MPVA had violated the Regulatory Agreement by filing a bankruptcy petition. As the plaintiff notes, however, this cause of action arises from the improper transfer of project funds to MPVA's bankruptcy attorneys and not any breach of the Regulatory Agreement for filing a bankruptcy petition in violation of paragraph 8 of the Agreement. The two motions by Akin, Gump in bankruptcy court for distribution of retainer funds do not indicate the source of the retainer of which they seek disbursement, much less that the retainer was paid from MPVA's project assets and income in violation of the Regulatory Agreement. Likewise, the Notice of Hearing regarding MPVA's application to approve the employment of bankruptcy attorneys does not indicate the source of funds to pay these attorneys.

In short, the defendants have offered no evidence that proves that HUD actually discovered prior to December 24, 1991, that Mill Pond Village project funds were improperly distributed to attorneys in connection with MPVA's bankruptcy proceed-

ing. As such, the court concludes that there is no genuine issue of material fact that the plaintiff's action was timely-filed because HUD did not "discover[ ] any use of project assets and income in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, or any applicable regulation" prior to December 24, 1991. The defendants' motions for summary judgment on the ground of statute of limitations are therefore denied.

**B. *Res judicata***

█ McNeil argues as an alternative grounds for summary judgment in its favor that HUD had the opportunity in MPVA's bankruptcy proceeding to raise the claim that MPVA's transfers to bankruptcy lawyers were violations of the Regulatory Agreement, and therefore grounds for liability under section 1715z–4a, and failed to do so. As such, McNeil argues that the plaintiff is now precluded by *res judicata* from pursuing its claim under 1715z–4a against McNeil.

█ "The doctrine of *res judicata*, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Monahan v. N.Y. City Dep't of Corrs.*, 214 F.3d 275, 284 (2d Cir.2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). The Second Circuit has adopted the rule that " 'any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or *could have been raised therein* is barred under the doctrine *res judicata*.'" *Sure–Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 873 (2d Cir.1991) (emphasis in original) (quoting *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972)). In the context of a prior

bankruptcy reorganization confirmation, "[t]o determine whether the doctrine of *res judicata* bars a subsequent action, [the court must] consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." *Corbett v. MacDonald Moving Servs.*, 124 F.3d 82, 87–88 (2d Cir.1997). "In the bankruptcy context, [the court must] ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness' of the reorganization plan." *Id.* at 88 (quoting *Sure–Snap*, 948 F.2d at 875–76).

■ First, McNeil is not the same party as MPVA for purposes of this action or the bankruptcy proceeding, and McNeil was not the privy of MPVA in the bankruptcy proceeding. Second, it is undisputed that HUD was not a party to MPVA's bankruptcy proceeding, but that CHFA entered the bankruptcy as a creditor. For the plaintiff's action to be barred by *res judicata*, therefore, HUD must have been in privity with CHFA at the time of the bankruptcy proceeding or as to this cause of action. *See Sure–Snap*, 948 F.2d at 874 ("The test for *res judicata* used in this Circuit also requires that the same parties (or their privies), be litigating the same cause of action."). "It is well settled in this circuit that literal privity is not a requirement for *res judicata* to apply." *Monahan*, 214 F.3d at 285. "Instead, a party will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation.'" *Id.* (quoting *Alpert's Newspaper Delivery, Inc. v. The*

*N.Y. Times Co.*, 876 F.2d 266, 270 (2d Cir.1989)). Thus, "[w]hen an asserted claim is identical to one that has been previously litigated, relitigation may be barred to conserve judicial resources and to allow the prevailing party to enjoy the benefits of its victory and avoid further costs. However, claim preclusion may be asserted only when the precluded party's interests have been represented in a previous lawsuit." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir.1995). "Whether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." *Id.* at 346.

Here, HUD had no claim in bankruptcy on MPVA's mortgage itself, and it is undisputed HUD was not the subrogee of CHFA at the time of the bankruptcy petition.[4] Moreover, CHFA had no section 1715z–4a claim against MPVA or McNeil that it could have litigated in the bankruptcy proceeding, since only the Secretary of HUD may request the Attorney General to bring an action for double damages under section 1715z–4a.

■ "*Res judicata* may bar non-parties to earlier litigation not only when there was a formal arrangement for representation in, or actual control of, the earlier action but also when the interests involved in the prior litigation are virtually identical to those in later litigation." *Id.* at 345. The court finds that these factors are not present in this case. CHFA did not have the same interests as HUD with regard to a double damages claim against McNeil or

4. McNeil's reliance on *English v. HUD*, No. 83 C 6579, 1984 U.S. Dist. LEXIS 19914 (N.D.Ill. Jan. 31, 1984), in which the district court held that HUD was in privity with the company where HUD pays the mortgagee af-

ter a judgment of default on the mortgaged property and HUD thereby takes by assignment all claims of the mortgagee against the mortgagor arising out of the foreclosure proceedings, is therefore unavailing.

any of the other defendants for improper use of project funds in violation of the Regulatory Agreement between HUD and MPVA. HUD's interests with regard to the present claim against McNeil were not adequately represented by CHFA in the bankruptcy, nor was CHFA vested with the authority of representation for HUD.

The court concludes that no genuine issue of material fact exists as to whether HUD was in privity with CHFA for purposes of *res judicata*. Because McNeil was not MPVA's privy and HUD was not CHFA's privy for purposes of the present action, the court need not consider the other elements required for claim preclusion and rejects McNeil's argument for summary judgment on the basis of *res judicata*.

## C. No misuse of funds during McNeil's tenure as property manager

 McNeil also argues that the majority of the funds at issue were held in a retainer trust account for the benefit of the bankrupt Mill Pond Village estate during the time that McNeil managed Mill Pond Village. McNeil argues that, once MPVA filed its bankruptcy petition, all of the project funds were unavailable for use by MPVA for the benefit of the Mill Pond Village and its residents absent order of the bankruptcy court. However, according to McNeil, until the bankruptcy court in December 1991 ordered the distribution of the funds held in retainer accounts by Akin, Gump, those fund were held in trust for the benefit of the bankrupt Mill Pond Village estate. McNeil argues that it has no liability for misuse of funds because it was replaced as property manager of Mill Pond Village in September 1991.

This argument is unavailing. The court concludes that the project funds at issue were disbursed for purposes of liability under section 1715z–4a at the moment they were transferred into the retainer accounts of MPVA's bankruptcy attorneys, and not only when the bankruptcy court ordered the final distribution of the funds to the bankruptcy attorneys. The court concludes that there is no genuine issue of material fact that these June 1991 disbursements constituted a "use of assets or income in violation of the regulatory agreement" between HUD and MPVA.

Subsection 1715z–4a(a)(1) provides that

a use of assets or income in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, or any applicable regulation shall include any use for which the documentation in the books and accounts does not establish that the use was made for a reasonable operating expense or necessary repair of the project and has not been maintained in accordance with the requirements of the Secretary and in reasonable condition for proper audit.

This court, among others, has previously concluded that "[t]he use of project funds for legal and/or other expenses for the benefit of the project owners is not a reasonable and necessary cost of maintaining and operating the project." Ruling in *United States of America v. West St. Assocs. Ltd. P'ship et al.*, 3:96–cv–1864, at 9–10 (citing cases), attached as Ex. 5 to Plaintiff's Memo. in Support (Dkt. No. 153).

The retainer fees paid to Akin, Gump and Murtha, Cullina by McNeil on behalf of MPVA from project funds were clearly used for the benefit of MPVA in covering its legal expenses. *See Harvey*, 68 F.Supp.2d at 1019–20 (collecting cases). The legal fees were paid in furtherance of a purpose– filing a bankruptcy petition– in clear violation of the Regulatory Agreement. *See* McNeil's Statement of Undisputed Facts (Dkt. No. 151), Ex. G at ¶ 8.

As such, the court rejects McNeil's argument that it should not be held liable under section 1715z–4a because it was no longer property manager of Mill Pond Village when the final distribution of funds was ordered by the bankruptcy court to MPVA's bankruptcy attorneys. The violation of the regulatory agreement occurred when the project funds were disbursed in June 1991, during McNeil's tenure as the property manager of Mill Pond Village. Because the court rejects each of McNeil's grounds for summary judgment, the motion of McNeil [Dkt. No. 149] for summary judgment is denied.

### D. Liability of McNeil under 12 U.S.C. § 1715z–4a

The plaintiff has moved for summary judgment against McNeil on the issue of McNeil's liability for double damages under section 1715z–4a. It is undisputed that McNeil served as the property manager of Mill Pond Village in 1991, that McNeil was required to comply with the terms of the Regulatory Agreement, that the Agreement prohibited the payment of project fund except for surplus cash and to pay for reasonable operating expenses and necessary repairs, that Mill Pond Village was never in a surplus cash position while McNeil managed the property, and that McNeil disbursed project funds from Mill Pond Village's operating account that had been received as rental income or income from the operations of Mill Pond Village. *See* McNeil's Response to Requests for Admission, attached as Ex. 3 to Plaintiff's Memo. in Support (Dkt. No. 153). It is also undisputed that the payments on June 11, 1991, to Akin, Gump and Murtha, Cullina were paid from project funds from the operating account of Mill Pond Village. As the court concluded above, moreover, the disbursements of project funds to Akin, Gump and Mur-

tha, Cullina were in violation of the Regulatory Agreement.

Liability under section 1715z–4a attaches for the use of "any assets or income ... by any person in violation of (A) a regulatory agreement that applies to a multifamily project whose mortgage is insured or held by the Secretary under Title II of the National Housing Act [section 1707 et seq. of this title]...." 12 U.S.C. § 1715z–4a(a)(1)(A). Subsection 1715z–4a(c) provides that, "[i]n any judgment favorable to the United States entered under this section, the Attorney General may recover double the value of the assets and income of the project that the court determines to have been used in violation of the regulatory agreement, or such other form of regulatory control as may be imposed by the Secretary, or any applicable regulation, plus all costs relating to the action, including but not limited to reasonable attorney and auditing fees."

As the property manager of Mill Pond Village, McNeil is a "person" within the meaning of subsection 1715z–4a(a)(2). The property manager of Mill Pond Village is clearly an "agent of any owner," namely, MPVA. *Cf. United States v. Cofield,* 215 F.3d 164, 168 (1st Cir.2000) (rejecting the defendant's argument that "agent of any owner" in limited to "a 'managing agent,' that is to say, someone who has general responsibility for managing a project").

Thus, the court finds there is no genuine issue of material fact that McNeil violated the Regulatory Agreement through the disbursement of a total of $146,000 of Mill Pond Village's project funds to Akin, Gump and Murtha, Cullina and is therefore a "person" liable for double damages under section 1715z–4a. As such, the plaintiff's motion for summary judgment is granted.

### E. Phillips and Cashwell as "persons" for purposes of 12 U.S.C. § 1715z–4a

■ The other defendants remaining in this case, Phillips and Cashwell, argue in support of their motion for summary judgment that they are not "persons" for purposes of liability under section 1715z–4a. At oral argument on March 20, 2001, the parties agreed that whether defendants in the position of Phillips and Cashwell are "persons" under subsection 1715z–4a(a)(2) is an issue of law. Furthermore, the parties represented, and the court's research has confirmed, that this is an issue of first impression. The court has found no reported decisions or decisions available on electronic databases addressing whether an officer (or the agent of an officer) of an corporation that owns a corporation which is the general partner of the partnership that owns the project is a "person" under subsection 1715z–4a(a)(2).

■ Subsection 1715z–4a(a)(2) defines "person" under section 1715z–4a to include, in pertinent part, "any person or entity which owns a project, as identified in the regulatory agreement, including but not limited to any stockholder holding 25 percent or more interest of a corporation that owns the project," or "any officer, director, or partner of an entity owning the project," or "any ... assignee, successor in interest, or agent of any owner." 12 U.S.C. § 1715z–4a(a)(2). The court concludes that the definition of "persons" under subsection 1715z–4a(a)(2) does not, by its plain language, extend to entities or persons which own an entity which owns the project, based on the plain language used in the definition: "owns a project," "owns the project," and "owning the project." The court concludes that these phrases delimit the scope of the operative terms in the definition of "person" in subsection 1715z–4a(a)(2) to persons or entities, including corporations and partnerships, which own the project for which HUD has insured the mortgage and not which merely own the entity which owns the project.

On the basis of this interpretation, the court finds that there is no genuine issue of material fact that neither Phillips nor Cashwell are "persons" under section 1715z–4a. First, Phillips was not an officer "of an entity owning the project." It is undisputed that, at most, he was an officer of a corporation owning the majority of stock in a corporation that owned the corporation that served as general partner of the partnership which owned the project. Cashwell was not even an officer of a corporation owning the majority of stock in a corporation that owned the corporation that served as general partner of the partnership which owned the project, but rather was an agent of Phillips or the corporation that Phillips worked for. As such, as a matter of law, Phillips and Cashwell are not "persons" under section 1715z–4a as "any officer, director, or partner of an entity owning the project."

■ Second, the court interprets "any owner" in the phrase "any ... assignee, successor in interest, or agent of any owner" to mean owner of a project, and not owner of the owner of a project, consistent with the other use in subsection 1715z–4a(a)(2) of "owns a project," "owns the project," and "owning the project." *See United States v. Dauray*, 215 F.3d 257, 262 (2d Cir.2000) (holding that "the meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases (*noscitur a sociis*)"). There is no dispute that Phillips and Cashwell were not the agents or assignees of either MPVA, the actual owner of Mill Pond Village, or Envicon Development, the general partner of MPVA, or even Envicon Capital, the majority stockholder of Envicon Develop-

ment.[5] As such, as a matter of law, Phillips and Cashwell are not "persons" under section 1715z–4a as "any ... assignee, successor in interest, or agent of any owner."

Third, there is no evidence that Phillips or Cashwell were "stockholder[s] holding 25 percent or more interest of a corporation that owns the project," i.e., Envicon Development or MPVA. Phillips was an officer of a corporation that was the majority shareholder of a corporation that owned a corporation that was the general partner of the owner of the project at issue, the Mill Pond Village. Cashwell, in turn, was both an agent of Phillips and of the corporation that was the majority shareholder of a corporation that owned a corporation that was the general partner of the owner of the project at issue. As such, as a matter of law, Phillips and Cashwell are not "persons" under section 1715z–4a as "any person or entity which owns a project, as identified in the regulatory agreement, including but not limited to any stockholder holding 25 percent or more interest of a corporation that owns the project," or even an agent or officer of a "any person or entity which owns a project, as identified in the regulatory agreement, including but not limited to any stockholder holding 25 percent or more interest of a corporation that owns the project."

The court thus concludes that there is no genuine issue of material fact that neither Phillips not Cashwell is a "person" within the meaning of section 1715z–4a. Accordingly, the plaintiff has failed to state a claim against Phillips and Cashwell un-

der section 1715z–4a upon which relief can be granted, and the motion of Phillips and Cashwell for summary judgment is granted.[6]

## IV. CONCLUSION

For the foregoing reasons, McNeil's motion for summary judgment [Dkt. No. 149] is DENIED. The plaintiff's motion for partial summary judgment [Dkt. No. 152] are GRANTED. The motion for summary judgment of Phillips and Cashwell [Dkt. No. 143] is GRANTED.

There remain to be decided in this case issues concerning the plaintiff's damages against McNeil under 12 U.S.C. § 1715z–4a(c). The plaintiff is hereby ordered to file a brief in support of its claim for damages within fourteen (14) days of the date of this order. McNeil may file a response within fourteen (14) days of the date it receives the plaintiff's brief. The court will issue a calendar at a later date to schedule a hearing on damages.

**SO ORDERED.**

5. The plaintiff denies any knowledge of Envicon Capital Corporation but offers no evidence to suggest that Envicon Capital was not in fact the corporate owner of Envicon Development. As such, the court takes as true, for purposes of these cross-motions for summary judgment, the defendants' representations regarding the relationship between Southmark, Envicon Capital, Envicon Development, and MPVA, which relationship the plaintiff does not deny.

6. The court therefore need not take up the other arguments offered by Phillips and Cashwell in support of their motion for summary judgment.