**HARGROVE & CONSTANZO, Plaintiff,**

**v.**

**COMMISSIONER of INTERNAL REVENUE, et al.,
Defendants.**

**No. Civ–F–06–0046 AWI DLB.**

United States District Court,
E.D. California.

Sept. 23, 2006.

Neal E. Costanzo, J. Brent Richardson, Hargrove & Costanzo, Fresno, CA, Theodore William Phillips, Phillips, Greenberg & Hauser, LLP, Placerville, CA, for Plaintiff.

Hilarie Elise Snyder, U.S. Department of Justice Office of Special Litigation Ben Franklin Station, Washington, DC, for Defendants.

### ORDER RE: MOTION TO DISMISS COUNTERCLAIM

ISHII, District Judge.

This case is before the court on Plaintiff's motion to dismiss the counterclaim, asserting the cause of action is barred by statute of limitations and the counterclaim fails to plead fraud with the specificity required by Fed. R. Civ. Proc. 9(b). Doc. 16. Defendants filed a timely opposition contesting both assertions. Doc. 19. Plaintiff filed a timely reply. Doc. 20. The matter was taken under submission without oral argument.

### I. History

Between December 1995 and April 2000, the law firm of Hargrove & Costanzo, through general partner Richard Hargrove ("Hargrove"), served as bond counsel for 19 bond issues funding real estate development. Hargrove wrote opinion letters and gave general verbal assurances that these bonds were exempt from federal income tax pursuant to 26 U.S.C. § 103(a) and were not private activity bonds under 26 U.S.C. § 141. The Internal Revenue Service ("Government") has stated that Hargrove's legal conclusions are wrong, and the interest on the bonds are subject to federal income taxes.

On January 6, 2005, the Government sent Hargrove a letter stating it was considering the assessment of penalties under 26 U.S.C.

§ 6700 for activities related to the issuance of the 19 bonds. Title 26 U.S.C. § 6700 states:

> Any person who
>
> (1) (A) organizes (or assists in the organization of)
>
> (i) a partnership or other entity,
>
> (ii) any investment plan or arrangement, or
>
> (iii) any other plan or arrangement, or
>
> (B) participates (directly or indirectly) in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and
>
> (2) makes or furnishes or causes another person to make or furnish (in connection with such organization or sale)
>
> (A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or
>
> (B) a gross valuation overstatement as to any material matter, shall pay, with respect to each activity described in paragraph (1), a penalty ...

Specifically, the Government claims that Hargrove made false or fraudulent statements with respect to the excludability of income regarding an investment plan or arrangement for which he assisted in the organization thereof. On May 16, 2005, the Government formally issued a notice assessing $1,944,717 in penalties for the tax period ending December 31, 1999. The notice advised Hargrove that if he wished to contest the penalty, he could pay 15% and file a claim for refund on Form 843 by June 20, 2005. On June 17, 2005, Hargrove submitted a Form 843 claim and paid $19,000. Hargrove claimed $19,000 was the proper 15% amount as the $1.9 million figure was based on a faulty understanding of the law. The Government nonetheless filed a notice of intent to levy due to nonpayment of the assessment. Hargrove contacted the Government but had not received any substantive response. On January 12, 2006, Hargrove filed suit in the Eastern District of California against the Government, seeking refund of the $19,000, a declaration that the assessed penalty is invalid, injunctive relief against any attempt by the Government to collect on the penalty, and attorneys fees and costs. The Government counterclaimed for the balance of the Section 6700 penalty amount. Doc. 19.

## II. Legal Standards

### A. Fed. R. Civ. Proc. 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the allegations of the complaint in question. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The court will construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also *Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir.1981). Absent unusual circumstances, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by amendment. *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir.1996).

When a defendant challenges the legal sufficiency of a complaint, the court's review is limited to the complaint. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir.1993). As a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001); *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.1994). Material properly submitted as part of the complaint and materials the court may take judicial notice of may be considered. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89

(9th Cir.2001). If the parties present the court with any other evidence and the court considers it, the court must converting the Rule 12(b)(6) motion into a motion for summary judgment. Fed. R. Civ. Pro. 12(b)(6); *Anderson v. Angelone,* 86 F.3d 932, 934–35 (9th Cir.1996).

## B. Fed. R. Civ. Proc. 9(b)

■ "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. Proc. 9(b). "A pleading 'is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'" *Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir.1993), quoting *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866, 866 (9th Cir.1977). A complaint alleging fraud meets the standard if it alleges the time, place, and content of the fraudulent statements, including reasons why the statements are false. *Decker v. GlenFed, Inc.,* 42 F.3d 1541, 1547–48 (9th Cir.1994), en banc. "Where fraud allegedly occurred over a period of time, however, Rule 9(b)'s requirement that the circumstances of fraud to be stated with particularity are less stringently applied." *United States v. Hempfling,* 431 F.Supp.2d 1069, 1075 (E.D.Cal.2006), citing *Fujisawa Pharm. Co., Ltd. v. Kapoor,* 814 F.Supp. 720, 726 (N.D.Ill.1993); *United States ex rel. Semtner v. Med. Consultants, Inc.,* 170 F.R.D. 490, 497 (W.D.Okla.1997).

## III. Discussion

### A. Statute of Limitations

Hargrove asserts that a general catch-all statute of limitations provision (28 U.S.C. § 2462) governing the imposition of civil penalties applies. Doc. 16, Brief, at 7:12–17. In response, the Government points out that several federal circuits (though not the Ninth Circuit) have addressed this issue and concluded Section 2462 does not apply to Section 6700.

■ Title 28 U.S.C. § 2462 states, "Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." The tax code (title 26) contains sections dealing with limitations. Title 26 U.S.C. § 6501(a) states, "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." However, one of the exceptions states, "In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B [26 USCS §§ 1 et seq. or 2001 et seq.] ), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." 26 U.S.C. § 6501(c)(2). Title 26 U.S.C. § 6502 states, "Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun ... within 10 years after the assessment of the tax." In general, statute of limitations laws "must receive a strict construction in favor of the Government." *Badaracco v. Commissioner,* 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (discussing Section 6501(c) exceptions), quoting *E.I. Dupont De Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 68 L.Ed. 788 (1924).

The Fifth Circuit, in examining the relationship between Section 6501 and Section 6700, found that "every [district] court that has considered the issue has held that no period of limitations applies to the assessment of Section 6700 penalties." *Sage v. United States,* 908 F.2d 18, 24 (5th Cir.1990); see, e.g. *Agbanc, Ltd. v. United States,* 707 F.Supp. 423, 426 (D.Ariz.1988); *Emanuel v. United States,* 705 F.Supp. 434, 436 (N.D.Ill. 1989); *In re Tax Refund Litig.,* 766 F.Supp. 1248, 1264 (E.D.N.Y.1991), reversed in part on other grounds at *In re MDL–731,* 989

F.2d 1290 (2nd Cir.1993); *Kraye v. United States*, 1992 WL 439753, *3, 1992 U.S. Dist. LEXIS 19997, *8 (D.N.M.1992). The Sixth Circuit then went on to state Section 2462 does not apply to 26 U.S.C. § 6701, finding a general consensus that "Congress intended that penalties can be assessed pursuant to Sections 6700 and 6701 at any time. The Courts arrived at this conclusion by noting the absence of an express limitations period and the fact that Sections 6700 and 6701 are anti-fraud provisions in which Congress typically provides for unlimited periods of assessment.... For example, 26 U.S.C. § 6501(c)(1) and (2) provide that in the case of the filing of a false or fraudulent return with the intent to evade tax, or a willful attempt to evade tax, the tax may be assessed, or a proceeding in court for collection of the tax may be begun without assessment, at any time." *Mullikin v. United States*, 952 F.2d 920, 928 (6th Cir.1991). Relying on *Mullikin*, the Eighth Circuit similarly found Section 2462 inapplicable to Section 6700. *Lamb v. United States*, 977 F.2d 1296, 1297 (8th Cir.1992).

The Second Circuit came to the same con-·clusion, on different grounds in *Capozzi v. United States*, 980 F.2d 872, 874 (2nd Cir. 1992). That court found (1) assessment of a fine is not an action, suit, or proceeding within the meaning of Section 2462 as those "terms implicate some adversarial adjudication, be it administrative or judicial. An assessment of a penalty (or tax), however, is an ex parte act" and (2) "An assessment is not an enforcement of a penalty but merely the determination and recordation of an amount owed.... It is the collection of amounts owed, not the assessment of them, that may be properly termed 'enforcement' " under Section 2462. *Capozzi v. United States*, 980 F.2d 872, 874 (2nd Cir.1992). In discussing how Section 2462 applied to the Toxic Substances Control Act (18 U.S.C. §§ 2601–2629), the D.C. Circuit criticized the Second Circuit's finding in *Capozzi* that assessment is not enforcement. *3M Co. v. Browner*, 17 F.3d 1453, 1459 (D.C.Cir.1994). Hargrove cites to a Ninth Circuit decision dealing with Federal Election Campaign Act (2 U.S.C. §§ 431–455) which agreed with the D.C. Circuit, finding that assessment consti-

tutes enforcement. *FEC v. Williams*, 104 F.3d 237, 239 (9th Cir.1996), citing *3M Co. v. Browner*, 17 F.3d 1453 (D.C.Cir.1994). However, the D.C. Circuit's critique was limited the Second Circuit's reasoning in *Capozzi* and pointedly distinguished *Mullikin*. *3M Co. v. Browner*, 17 F.3d 1453, 1459 (D.C.Cir. 1994).

■ To sum up, the Second, Fifth, Sixth, and Eighth Circuits have all suggested that Section 2462 does not apply to Section 6700. Given these persuasive authorities, there does not appear to be any statute of limitations for the assessment of penalties under Section 6700.

### B. Pleading With Specificity

Hargrove alleges the Government's counterclaim does not plead fraud with the specificity required by Fed. R. Civ. Proc. 9(b). Doc. 16, Brief, at 15:1–3. Though there is some confusion as to the nature of Hargrove's motion, he appears to seek dismissal under Fed. R. Civ. Proc. 12(b)(6). The Government first suggests that heightened pleading does not apply, citing to an old Eighth Circuit case that stated in dicta, "We should doubt that this Rule has any application to a complaint in a suit to collect assessed tax deficiencies and fraud penalties, of which the taxpayer has administratively been given due notice of determination, assessment, and demand for payment." *Payne v. United States*, 247 F.2d 481, 485 (8th Cir. 1957). This issue was raised last year in another case arising out of the Eastern District of California: "The parties cited no cases, and the court found none, that applied Rule 9(b) to § 6700. Likewise, there are also no cases holding that Rule 9(b) does not apply to § 6700. Whether or not Rule 9(b) applies, Defendant is entitled to know the time frame of allegedly fraudulent conduct." *United States v. Hempfling*, 2005 WL 2334713, *5, 2005 U.S. Dist. LEXIS 24939, *16 (E.D.Cal.2005). While the language is equivocal, Judge Oliver Wanger formally stated the "motion to dismiss the Government's § 6700 claim for failure to comply with Rule 9(b) is GRANTED." *United States v. Hempfling*, 2005 WL 2334713, *5, 2005 U.S. Dist. LEXIS 24939, *16 (E.D.Cal.

2005). The Government's relevant pleadings will be held to the Fed. R. Civ. Proc. 9(b) standard.

■ In opposing the motion, the Government referred to the counterclaim, Hargrove's complaint, and a 206–page Government report which Hargrove himself requested judicial notice of. Doc. 19, Opposition, at 17:9–17. Hargrove objected, saying that the Government "can not save a defective pleading by reference to a 206–page agent's report filled with the kind of hearsay and irrelevant information contained in the one here." Doc. 6, Reply, at 6:10–12. Nevertheless, Hargrove has stated that the report was "referenced in paragraphs 4 and 5 of [Hargrove's] complaint, which report was admitted by [the Government] in its Answer at paragraphs 4 and 5 .... the referenced report is in the possession of both parties, was created by an agent of [the Government] and is not subject to reasonable dispute." Doc. 18, Request for Judicial Notice, at 1:22–28. The court may and formally does take judicial notice of the 206–page report insofar as it makes factual allegations. When dealing with a motion pursuant to Fed. R. Civ. Proc. 12(b)(6), materials the court may take judicial notice of may be considered. *Lee v. City of Los Angeles,* 250 F.3d 668, 688–89 (9th Cir.2001).

The fraud allegations contained in the counterclaim are as follows:

10. Hargrove and Costanzo assisted in the promotion, organization, sale, and marketing of these nineteen bond issues and participated in the sale of interests in these issues by:

a. attending city and town council meetings in order to find governmental entities that would agree to issue what Hargrove described as tax-exempt bonds;

b. making assurances to the developers and issuers that the bonds were tax-exempt; and

c. issuing opinion letters which stated that the bonds were (1) exempt from federal income tax pursuant to I.R.C. § 103(a) and (2) not a private activity bond under I.R.C. § 141.

11. The IRS determined that, contrary to Hargrove & Costanzo's characterizations, the bonds were not tax-exempt and, instead, each bond was a private activity bond as defined in I.R.C. §§ 141(a) and 141(c). In addition, the IRS determined that for several of the nineteen bonds, the issuer was not qualified to issue bonds under State law so the bond did not meet the tests in I.R.C. § 103. Thus, the IRS determined that these were not tax-exempt bonds and that the interest paid to the bondholders was subject to federal income tax.

12. Hargrove & Costanzo's statements, in connection with promoting the nineteen bond issues, that interest payments were tax-exempt were false and fraudulent.

13. Hargrove & Costanzo knew or had reason to know that its statements were false and fraudulent because, with respect to some or all of the nineteen bond issues:

a. the bond issues did not comply with State law;

b. the bond issues did not serve a public purpose;

c. the Development Finance Agreements, which were drafted by Hargrove & Costanzo, included provisions requiring that the bonds be classified as private activity bonds;

d. the bonds were organized and issued to provide developers with funds to pay delinquent private debt;

e. Hargrove & Costanzo deliberately targeted cities and towns that were small in size, had budget problems, and did not have staff familiar with municipal financing so that Hargrove & Costanzo could promote these bonds with little or no scrutiny;

f. Hargrove & Costanzo ignored third parties, the State of California, and the Securities and Exchange Commission, which challenged the validity of these bonds or similar bonds;

g. the proceeds of the bonds were used to buy out a dissatisfied partner;

h. the proceeds of the bonds were used to pay excessive fees to Hargrove & Costanzo and others for their role in organizing and promoting the scheme;

i. the value of the property that the bond proceeds were supposed to be used to purchase was intentionally inflated; and

j. Richard Hargrove has approximately 20 years of legal experience with bond transactions.

Doc. 11, Counterclaim, at 7:10–9:5. The content and the reasons why the statements are alleged to be fraudulent are relatively clear. What is unclear is the time and place in which these statements were made. The 206–page report, while providing some additional detail on the complex transactions, does not clarify when these allegedly fraudulent statements were made.[1] The Government generally states "the penalty conduct took place from 1995 through 2000." Doc. 19, Opposition, at 18:9.

■ Though there is some leeway to be given when the conduct alleged took place over a long period of time, a blanket statement covering five years will not do. In the previously cited Eastern District case, a complaint that "alleges generally that the fraudulent conduct occurred between 2003 and 2005, and sets forth specific dates on which *Hempfling* conducted-tax related seminars" was found to meet the Fed. R. Civ. Proc. 9(b) standard. *United States v. Hempfling*, 431 F.Supp.2d 1069, 1076 (E.D.Cal.2006). In an-

other case which recognized that flexibility should be applied to "cases of fraud that occur over a period of time and involve multiple acts," reference to the specific dates of a two-day meeting at which the key misrepresentations were made helped to ground the allegations. See *Unytite, Inc. v. Lohr Structural Fasteners, Inc.*, 1992 WL 220918, *3, 1992 U.S. Dist. LEXIS 13089, *8 (N.D.Ill. 1992). Allegations that "misrepresentations occurred over the course of 'several weeks' does not adequately indicate when and where the alleged fraud took place." *Segal Co. v. Amazon*, 280 F.Supp.2d 1229, 1231 (W.D.Wash.2003).

The Government plainly has the information necessary to perfect its pleading. Copies of the opinion letters and the dates and circumstances of the various meetings referenced would easily provide sufficient notice. Leave to amend is warranted.

## IV. Order

Hargrove's motion to dismiss the Government's counterclaim as barred by the statute of limitations is DENIED. Hargrove's motion to dismiss the Government's counterclaim for insufficient specificity as to fraud is GRANTED WITH LEAVE TO AMEND;

---

1. The following are examples of references to fraud which lack dates: "When the bonds were issued, Hargrove's bond opinion said they were exempt from state and federal income taxes." Doc. 18, Report, at 4; "In order to find governmental entities that would agree to issue their financing package as a tax-exempt bonds PGG, Hargrove and the Developer attended city council meetings to promote their financing package.... According to minutes from city and town council meetings...." Doc. 18, Report, at 6; "Hargrove's bond opinion states that the Sierra Central Valley PFA is a valid Joint Exercise of Powers Agency and interest paid to bondholders on the 1995 Series A bond financing is excluded from gross income for Federal income tax purposes pursuant to Section 103(a) of the Code." Doc. 18, Report, at 23–4; "Mr. Hargrove made a presentation to the City of Desert Springs, California asking them to participating [sic] in a PFA to issue a tax-exempt bond for a developer." Doc. 18, Report, at 182.

In other instances, dates are attached but there is no indication that the statement was fraudulent (relevant to the counterclaim): "On March 24, 1998 Richard Hargrove and David Fitzgerald discussed other potential projects that the City

could participate in. At this meeting the City approved the board for the new public financing authority. On April 1, 1998 Richard Hargrove and David Fitzgerald made another presentation and discussed one of the five projects and the proposed bond issue. Mr. Hargrove told San Joaquin that the City would have no liability for issuing or repaying bond issue." Doc. 18, Report, at 85; "On August 4, 1998 Hargrove provided Waterford PFA a letter explaining why the fee to members was allowed under state law. In Hargrove's explanation, he cites Section 6587 of the Government code, which states there is no limit to amount of funds authorized for the funding of public capital improvements. Hargrove discussed 6584.5 and 6588 of the Government Code dealing with the administrative expenses, costs of issuance and limits imposed by bond sections.... Hargrove mislead members by telling them that the requirements of section 6585.5 and 6588 of the California code do not apply."Doc. 18, Report, at 87; "For example, during the planning of the first bond issued by the Sierra Central Valley PFA, Mr. Hargrove told the Indian Tribe, in an October 18, 1995 letter, that the bond proceeds would be loaned to the Tribe." Doc. 18, Report, at 182.

the Government may file an amended counterclaim by 4 PM, October 16, 2006.

IT IS SO ORDERED.